No. 63,471

BOARD OF COUNTY COMMISSIONERS OF WYANDOTTE COUNTY, KANSAS, *Appellant*, v. KANSAS AVENUE PROPERTIES, *Appellee*.

(786 P.2d 1141)

Opinion filed February 14, 1990.

*John M. Duma,* assistant county counselor, argued the cause and was on the brief for appellant.

*William M. Modrcin,* of Morris & Larson, P.C., of Overland Park, argued the cause, and *Thomas E. Carew,* of Kansas City, Missouri, was with him on the brief for appellee.

*Thomas R. Powell,* city attorney, and *Joe Allen Lang,* senior assistant city attorney, of Wichita, were on the *amicus curiae* brief for City of Wichita.

*Henry E. Couchman, Jr.,* assistant city attorney, of Kansas City, was on the *amicus curiae* brief for City of Kansas City.

*Joseph W. Jeter* and *Charlene Brubaker,* of Jeter and Moran, of Hays, were on the *amicus curiae* brief for Ellis County Economic Development Corporation.

The decision of the court was delivered by

HOLMES, J.: The Board of County Commissioners of Wyandotte County appeals from a decision of the Shawnee County District Court which reversed the Kansas Board of Tax Appeals (BOTA) denial of an ad valorem tax exemption sought under Art. 11, § 13 of the Kansas Constitution. *Amicus curiae* briefs supporting the position of the landowner have been filed by the City of Kansas City, the City of Wichita, and the Ellis County Economic Development Corporation. We reverse.

The facts of this case are not disputed. Kansas Avenue Properties (KAP), a Kansas limited partnership, owns approximately 4.3 acres of land in Kansas City, Wyandotte County, Kansas. In 1987, KAP constructed a 56,000 square foot "multi-tenant" building on this land. Stephen Dunn, the developer and a general partner of KAP, testified before the BOTA that KAP intended to lease space in the building only to tenants who qualified for ad valorem tax exemption under Art. 11, § 13 of the Kansas Constitution.

Before constructing the building, KAP applied for ad valorem tax-exempt status from the City Council of the City of Kansas City. The City Council found that KAP's proposed business project met the economic development purposes of Art. 11, § 13 and granted KAP a 10-year exemption "for all buildings, land, and tangible personal property." KAP then filed its application for tax exemption with the BOTA pursuant to K.S.A. 79-213.

In an order issued April 29, 1987, the BOTA denied the application for tax exemption. Following a rehearing, the BOTA on June 1, 1988, again denied the application of KAP for ad valorem tax exemption. In doing so, the BOTA relied upon *In re Board of Johnson County Comm'rs,* 225 Kan. 517, 592 P.2d 875 (1979), and held:

"The Board cannot find that the lessor's use of the property is one which qualifies for exemption under Article 11, Section 13 of the Kansas Constitution. The use made by the owner of the property, *i.e.,* the leasing of the property in question, is not manufacturing, conducting research and development, or storing goods or commodities."

### The BOTA, in its order on rehearing, stated:

"The applicant has presented evidence that there is now a tenant in the facility and other leases are being negotiated with all uses by the various lessees to be qualifying uses as required by Article 11, Section 13. The applicant has also presented a legal argument that the Board has not properly construed *In Re Board of Johnson County Commissioners,* 225 Kan. 517, 592 P.2d 875 (1979), given the intent and purpose of the constitutional amendment exempting property for economic development purposes. The applicant suggests that the standard for exemption under Section 13 of Article 11 differs significantly from the standard set forth in Section 1 of Article 11. The applicant concurs with the Board's rationale that the exclusive use test set out in Section 1 of Article 11 requires that all uses made of the property be for the stated exempt purpose. The applicant, however, contends that Section 13 of Article 11 was adopted by the people of Kansas for the specific purpose of allowing local governments to grant exemptions where the property is used exclusively by a business for one of the stated purposes. The applicant contends that the only use which must be considered under Section 13 of Article 11 is the use by the business, not the owner of the property. In other words, if *any* business is using the property for one of the stated purposes, it qualifies for exemption regardless of any other business use. The applicant suggests that the 'exclusive use' requirement is that the property be used exclusively 'by a business' for one of the specified purposes.

"The applicant also suggests that the Board examine the intent of the makers and adopters of this constitutional amendment as a means of ascertaining the meaning of the provisions within the constitutional amendment. Taxpayer cited cases for the proposition that a constitutional provision is not to be narrowly or technically construed, but rather its language should be interpreted to mean what the words imply to men of common understanding. The Board wholeheartedly concurs with this suggestion; however, the Kansas Supreme Court has specifically addressed what the term 'used exclusively' shall mean. The Legislature certainly had knowledge of what the Kansas high court has determined exclusive to mean and presumably knew what language was being used in the amendment that was placed before the voters for adoption. If the Legislature and the people did not intend for an exclusive use test to be applied to this type of exemption, the exclusive use language would have been deleted or the amendment would not have been adopted by the people. Taxpayer suggests an elementary rule of constitutional construction is that effect should be given to every part and every word and that no portion of the law should be treated as superfluous unless there is some clear reason to the contrary. The Board has followed this elementary rule of construction in that the Board has given every word, including 'used exclusively' the effect the words 'used exclusively' convey. If, as taxpayer suggests, the legal intendment is that each and every clause has been inserted for some useful purpose, then the Board

has given effect to the words 'used exclusively.' The Kansas Supreme Court has consistently held used exclusively means just that, used exclusively. Any use other than that specifically authorized in the exemption language disqualifies the property for exemption.

"The facts in this case, as set out in the Board's original Order demonstrate that there are multiple uses of this property. Some of these uses would fit within the constitutional amendment exempting property for economic development purposes and some do not. Since the constitutional amendment does not exempt property which is being leased, the Board has no recourse but to sustain its original Order denying exemption for failure to establish that the property is used exclusively by a business for the purpose of manufacturing articles of commerce, conducting research and development or storing goods or commodities which are sold or traded in interstate commerce."

KAP appealed the final order of the BOTA to the Shawnee County District Court. The sole issue before the district court was whether rental property qualifies for tax exemption under Art. 11, § 13. It is undisputed that the proposed use of the property by the business tenants would qualify for exemption if the businesses were being conducted by the owner of the property. Stated in another way, the issue is whether rental property used by a business for economic development purposes qualifies for exemption from ad valorem taxation pursuant to Art. 11, § 13.

In a memorandum decision, the Shawnee County District Court reversed the BOTA, adopting as its conclusions of law the arguments in KAP's memorandum which was submitted to the BOTA and to the district court. As would be expected, the memorandum filed by KAP contains arguments, opinions, and legal authorities supporting its position. Numerous arguments are propounded in the KAP memorandum and it would have been helpful if the district court had prepared an opinion which specified the arguments and authorities upon which it based its decision. The district court apparently determined that the leased property qualified for exemption because the language of Art. 11, § 13 modifies the exclusive use test to apply only to the business physically using the property when it is used for one of the three enumerated purposes in the amendment; because the language indicates legislative intent to give cities and counties broad authority to grant or deny exemptions; because the legislative history and the explanatory statement provided to the voters reveal no distinction between rental or owned property; and because the

purpose of the amendment is to increase Kansas' ability to compete with other states. The Board of County Commissioners of Wyandotte County has appealed the district court decision granting the exemption.

In 1986, the Kansas Legislature adopted House Concurrent Resolution No. 5047 (HCR 5047) to submit to the voters a proposal to amend the Kansas Constitution. The proposed amendment was adopted by the voters on August 5, 1986. The amendment, designated as Art. 11, § 13 of the Kansas Constitution, reads:

"§ 13. Exemption of property for economic development purposes; procedure; limitations. *(a) The board of county commissioners of any county or the governing body of any city may,* by resolution or ordinance, as the case requires, *exempt from all ad valorem taxation* all or any portion of the appraised valuation of: (1) *All buildings, together with the* land *upon which such buildings are located, and all tangible personal property associated therewith used exclusively by a business for the purpose of:* (A) Manufacturing articles of commerce; (B) conducting research and development; or (C) storing goods or commodities which are sold or traded in interstate commerce, which commences operations after the date on which this amendment is approved by the electors of this state, *or (2) all buildings, or added improvements to buildings* constructed after the date on which this amendment is approved by the electors of this state, *together with the land upon which such buildings or added improvements are located,* and all tangible personal property purchased after such date and associated therewith, *used exclusively for the purpose of:* (A) Manufacturing articles of commerce; (B) conducting research and development; or (C) storing goods or commodities which are sold or traded in interstate commerce, which is necessary to facilitate the expansion of any such existing business if, as a result of such expansion, new employment is created.

(b) Any ad valorem tax exemption granted pursuant to subsection (a) shall be in effect for not more than 10 calendar years after the calendar year in which the business commences its operations or the calendar year in which expansion of an existing business is completed, as the case requires.

(c) The legislature may limit or prohibit the application of this section by enactment uniformly applicable to all cities or counties.

(d) The provisions of this section shall not be construed to affect exemptions of property from ad valorem taxation granted by this constitution or by enactment of the legislature, or to affect the authority of the legislature to enact additional exemptions of property from ad valorem taxation found to have a public purpose and promote the general welfare." (Emphasis added.)

In construing an exemption to taxation, certain well-recognized rules of construction apply. Those rules were summarized in *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 693 P.2d 1187 (1985):

"In cases involving questions of claimed exemption from ad valorem taxation, the following rules and legal principles have been established as guidelines to be followed by the courts:

(1) Taxation is the rule; exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. *Manhattan Masonic Temple Ass'n v. Rhodes*, 132 Kan. 646, 649, 296 Pac. 734 (1931);

(2) Constitutional and statutory provisions exempting property from taxation are to be strictly construed. *Lutheran Home, Inc., v. Board of County Commissioners*, 211 Kan. 270, 275, 505 P.2d 1118 (1973); *In re Board of Johnson County Commissioners*, 225 Kan. 517, 519, 592 P.2d 875 (1979);

(3) The burden of establishing exemption from taxation is on the one claiming it. *Seventh Day Adventist v. Board of County Commissioners*, 211 Kan. 683, 690, 508 P.2d 911 (1973);

(4) The question is not whether or not the property is used partly or even largely for the purpose stated in the exemption provisions, but whether it is used exclusively for those purposes. *Clements v. Ljungdahl*, 161 Kan. 274, 167 P.2d 603 (1946); *In re Board of Johnson County Comm'rs*, 225 Kan. at 519;

(5) The phrase 'used exclusively' in the constitution and statutes means that the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use. *Seventh Day Adventist v. Board of County Commissioners*, 211 Kan. 683." 236 Kan. at 645-46.

However, these rules of construction must also be considered in light of equally well-established principles relating to constitutional construction. In *Behrmann v. Public Employees Relations Board*, 225 Kan. 435, 591 P.2d 173 (1979), the court held:

"In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers and adopters of that provision." Syl. ¶ 3.

"In interpreting and construing a constitutional amendment the court must examine the language used and consider it in connection with the general surrounding facts and circumstances that caused the amendment to be submitted." Syl. ¶ 4.

In *State, ex rel., v. Hines*, 163 Kan. 300, 304, 182 P.2d 865 (1947), we stated, "The rule is old that in expounding the constitution every word must be given due force and appropriate meaning."

Appellant contends that the district court erred in apparently adopting the argument that the inclusion of the words "by a business" in Art. 11, § 13 established a new and different standard for determining whether the property is "used exclusively" for tax-exempt economic development purposes. KAP conceded in its brief, "If Section 13 did not include the phrase 'by a business,' Kansas Avenue would agree that this provision could be interpreted in the same manner as in Section 1 to deny exemption to rental property."

The BOTA, and the appellant here, relied heavily upon our decision in *In re Board of Johnson County Comm'rs,* 225 Kan. 517, 592 P.2d 875 (1979), wherein we held that property owned by a non-tax-exempt entity and leased for profit to a tax-exempt entity pursuant to K.S.A. 79-201b *First* (Weeks 1977), was not being used exclusively for the statutory purpose and did not qualify for tax exemption. The statute provided:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"First: *All real property, and tangible personal property, actually and regularly used exclusively for hospital purposes by a hospital* as the same is defined by K.S.A. 1977 Supp. 65-425, and amendments thereto, *or a psychiatric hospital* as the same is defined by K.S.A. 1977 Supp. 59-2902, and amendments thereto, which hospital or psychiatric hospital is operated by a corporation organized not for profit . . . ." (Emphasis added.)

As in the present case, the parties desiring the exemption in *Johnson County Comm'rs* contended that "used exclusively" meant only the physical use of the property, and that the intangible benefits of ownership, including renting of the property for profit, did not constitute using the property. Further, because the exemption benefits would flow through to the non-profit corporation which was responsible for the taxes under the parties' lease agreement, it was argued that granting the exemption would be consistent with the intent of the Kansas Constitution and statutes.

Despite these arguments, the court relied upon the well-established definition of the term "used exclusively" as defined in *Seventh Day Adventist v. Board of County Commissioners,* 211 Kan. 683, Syl. ¶ 2, 508 P.2d 911 (1973), where we held, "The

phrase 'used exclusively' in the constitution and statute means that the use made of the property sought to be exempted from taxation, must be only, solely, and purely for the purposes stated, and without participation in any other use." The court in *Johnson County Comm'rs* stated:

"To say that an investor who owns valuable property, real or personal, and leases it for profit is not using his property ignores the obvious fact that the owner-lessor is exercising his right to use the property just as surely as if he were utilizing it in a physical sense for his own objectives. . . . The renting by the lessor and the physical use by the lessee constitute simultaneous uses of the property and *when an owner leases his property to another, the lessee cannot be said to be the only one using the property.* The owner is using it as he sees fit to reap a profit from his investment just as surely as if he physically operated the property.

"*We hold that property* owned by a non-tax-exempt entity and *leased for profit to a qualifying tax-exempt entity, is not being used exclusively for tax-exempt purposes* and is subject to ad valorem and property taxes." 225 Kan. at 522-23. (Emphasis added.)

KAP and the *amici* briefs attempt to distinguish *Johnson County Comm'rs,* contending first that the different language employed in Art. 11, § 13 and Art. 11, § 1 indicates a legislative intent to create a test which examines "the exclusive use made of the property by the business" rather than all uses. It is contended that the words "by a business" in the amendment must only refer to the tenant or physical user of the property and that when those words are given effect the KAP property qualifies for the exemption.

Kansas Constitution Art. 11, § 1(b)(2) provides:

"*All property used exclusively for* state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, merchant's and manufacturer's inventories and livestock and all household goods and personal effects not used for the production of income, shall be exempted from property taxation." (Emphasis added.)

While it is true that Art. 11, § 1 does not specify the "ultimate end user," it does not necessarily follow that the inclusion of the words "by a business" in Art. 11, § 13 changes existing case law. The obvious explanation for the omission of "users" from Art. 11, § 1 is that it would have been impracticable, if not impossible, to designate the vast number of various entities that would per-

form the numerous and diverse exempted purposes. Considering the economic development objectives of Art. 11, § 13, only "a business" would manufacture articles of commerce, conduct research and development, or store goods sold in interstate commerce and create employment opportunities. It could also be argued that Art. 11, § 1 does specifically enumerate the users of the property as being "state, county, municipal, literary, educational, scientific, religious, benevolent and charitable" entities.

Appellees and the *amici* briefs ignore that *Johnson County Comm'rs* addressed 79-201b, a statutory exemption, not Art. 11, § 1. That statute specifically provided ad valorem tax exemption for real and personal property "actually and regularly used exclusively for hospital purposes *by a hospital*." The statute's designation of the ultimate end user did not preclude this court from holding that the use by the owner must be considered along with the use by the lessee in determining exclusive use.

In *Kenneth Godfrey Aviation, Inc. v. Smith,* 12 Kan. App. 2d 434, 746 P.2d 1068 (1987), *rev. denied,* 242 Kan. 903 (1988), the Court of Appeals examined whether the business aircraft exemption provisions of K.S.A. 79-201k (Ensley 1984) allowed one to look only at the owner's use of the aircraft in determining whether it qualified for exemption or whether one must consider all uses being made of the aircraft. The statute provided, in part:

"(b) The following described property, to the extent herein specified, is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

*First.* For all taxable years commencing after December 31, 1982, all aircraft actually and regularly used exclusively in the conduct of a business or industry."

The facts of the case are the reverse of the factual situation in *Johnson County Comm'rs.* The owner's use of the property was solely for business purposes but the renter's use was not always for such purpose. Kenneth Godfrey Aviation, Inc., a fixed-based operator, was seeking an exemption under the statute for aircraft used in its business. The company rented and chartered airplanes to the general flying public for use by the renters for whatever purpose, be it business or personal, they chose. The Court of Appeals denied the exemption on the basis that the property was not "used exclusively" in the conduct of a business or industry

since the renters used the airplanes for personal rather than business purposes. The sole issue presented to the Court of Appeals was whether the owner's airplanes were used exclusively in the conduct of business, thereby entitling them to exemption from ad valorem taxation. The Court of Appeals followed the definition for "used exclusively" that was set out in *Seventh Day Adventist*. There was no question but that as far as Godfrey Aviation, Inc., was concerned, its airplanes were being used solely for its business purpose. The Court of Appeals went on to state:

"In interpreting other tax exemption statues, the Kansas Supreme Court has held ownership is not the controlling factor; 'exclusive use' is the test. *In re Board of Johnson County Comm'rs*, 225 Kan. 517, 520, 592 P.2d 875 (1979). Furthermore, the question is not whether property is used partly or even largely for the purposes stated in the exemption provisions, but whether the property is used exclusively for those purposes. *In re Application of Int'l Bhd. of Boilermakers*, 242 Kan. 302, 747 P.2d 781 (1987); *T-Bone Feeders*, 236 Kan. at 646; *Johnson County Comm'rs*, 225 Kan. at 519; *Cessna*, 11 Kan. App. 2d at 380." 12 Kan. App. 2d at 437.

*Godfrey* interpreted a statutory exemption specifically enacted to benefit the Kansas economy and found the use of rented property to be non-exclusive.

Other statutes also delineate the entity entitled to the exemption although there is no indication of a legislative intent to change established law pertaining to exclusive use. See K.S.A. 79-201 *First* ("all buildings used exclusively by school districts"); K.S.A. 79-201a *Second* ("[a]ll property used exclusively by the state or any municipality or political subdivision of the state") K.S.A. 79-201a *Third* ("[a]ll works, machinery and fixtures used exclusively by any rural water district"). K.S.A. 79-201a *Second* also demonstrates that the legislature is fully cognizant of the difference between leased and owned property.

While this court has not previously had the opportunity to interpret Art. 11, § 13, the court has given the term "used exclusively" a consistent meaning in case law under Art. 11, § 1 and under statutory tax exemptions. *Defenders of the Christian Faith v. Board of County Commissioners*, 219 Kan. 181, 547 P.2d 706 (1976); *Seventh Day Adventist v. Board of County Commissioners*, 211 Kan. 683; *Lutheran Home, Inc., v. Board of County Commssioners*, 211 Kan. 270, 505 P.2d 1118 (1973); *Topeka Pres-*

*byterian Manor v. Board of County Commissioners,* 195 Kan. 90, 402 P.2d 802 (1965); *Kansas State Teachers Ass'n v. Cushman,* 186 Kan. 489, 351 P.2d 19 (1960); *Defenders of the Christian Faith, Inc. v. Horn,* 174 Kan. 40, 254 P.2d 830 (1953); *A.T. & S.F. Hospital Ass'n v. State Commission of Revenue & Taxation,* 173 Kan. 312, 246 P.2d 299 (1952); *Mason v. Zimmerman,* 81 Kan. 799, 106 Pac. 1005 (1910); *Stahl v. Educational Assoc'n.,* 54 Kan. 542, 38 Pac. 796 (1895); *St. Mary's College v. Crowl, Treasurer, &c.,* 10 Kan. 442 (1872); *Vail v. Beach,* 10 Kan. 214 (1872); *Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344 (1871).

In *Farmers Co-op v. Kansas Bd. of Tax Appeals,* 236 Kan. 632, 694 P.2d 462 (1985), the owners of certain farm machinery and equipment sought a tax exemption based upon K.S.A. 79-201i and 79-201j (Ensley 1984). Those statutes read:

79-201i. *"It is the purpose of K.S.A. 79-201j of this act to promote, stimulate and develop the general welfare, economic development and prosperity of the state of Kansas* by fostering the growth and development of agricultural endeavors within the state. Agriculture, as conducted in farming and ranching operations throughout the state, is the primary basis of the Kansas economy. Communities, regions, and the state as a whole are materially dependent upon agricultural endeavors and derive substantial financial benefit from the success of Kansas agriculture. Farming and ranching operations require the investment of large sums of capital for the purpose of providing the land on which the operations are conducted, and the farm machinery and equipment necessary to satisfactorily carry out such endeavors. Because of agriculture's unique requirements of substantial capital investment, the property tax burden becomes a deterrent to such investment and, in some instances, an encouragement to farm and ranch abandonment. Kansas, and all its citizens, will benefit from any improvement in the economic environment of Kansas agriculture. The exemption from the ad valorem property tax of farm machinery and equipment actually and regularly used in farming and ranching operations will constitute an incentive to agriculture and will improve the general economy of the state. Considering this state's heavy reliance on agriculture, *the enhancement of agricultural endeavors is deemed to be a public purpose which will promote the general welfare of the state and be for the benefit of the people of the state."* (Emphasis added.)

79-201j. "The following described property, to the extent specified by this section, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"All farm machinery and equipment. *The term 'farm machinery and equipment' means that personal property actually and regularly used exclusively*

*in farming or ranching operations.* The term 'farm machinery and equipment' shall not include any passenger vehicle, truck, truck tractor, trailer, semitrailer or pole trailer, other than a farm trailer, as the terms are defined by K.S.A. 8-126 and amendments thereto." (Emphasis added.)

The taxpayers consisted of two groups. The individual taxpayers were engaged in the business of providing custom cutting services to farmers in Kansas and other states while the Farmers Cooperative owned fertilizer equipment and leased it to Kansas farmers. The only actual physical use made of the property in Kansas was "in farming or ranching operations" as specified in the statute.

The issue before the court was whether 79-201j "requires the one requesting the exemption be the owner of the equipment and also be the owner, tenant, or sharecropper of the land on which it is used." 236 Kan. at 634. The statute exempted all farm machinery and equipment from ad valorem taxation, defining such equipment as that personal property actually and regularly used exclusively in farming or ranching operations.

This court denied an exemption to both groups. As the legislative intent implied limiting the exemption to those who farm or ranch and because providing a service by leasing or by operating the equipment constituted a "simultaneous use," the property was not being used exclusively for tax-exempt purposes and thus did not qualify for ad valorem exemption even though it may have promoted economic development.

In *T-Bone Feeders, Inc. v. Martin,* 236 Kan. 641, 693 P.2d 1187 (1985), a unanimous court again considered the statutory exemption granted by K.S.A. 79-201i and 79-201j (Ensley 1984) and reached the same result as in *Farmers Co-op,* although the decision hinged on the question of whether the operation of a feedlot fell within the statutory designation of "farming or ranching operations." The case illustrates that broadly worded statutes, even when enacted to promote economic development, will be narrowly or strictly construed where exemption from taxation is involved.

The statutes in *Farmers Co-op* and *T-Bone Feeders* were specifically adopted "to promote, stimulate and develop the general welfare, economic development and prosperity of the state of Kansas by fostering the growth and development of agricultural

endeavors within the state." The legislative history of HCR 5047 and the language of Art. 11, § 13 clearly reveal that the purpose of the constitutional amendment was also to promote economic development within the State of Kansas.

The district court, by adopting the arguments of KAP in its memorandum, apparently concluded that the inclusion of the words "by a business" in the proposed constitutional amendment demonstrated an intent to set a new standard for tax exemption based upon the ultimate use or physical use of the property and not the total use of the property. We do not agree that such an intent is clear from the language of the amendment or that such a conclusion is justified by the legislative history of HCR 5047.

It is interesting to note that if a determination of the construction of the amendment hinges solely upon the words "by a business" as contended by KAP then a ridiculous distinction must be made between a new business entity and an established one that wants to expand its operations. Subsection (a)(1) of the amendment provides an exemption for a newly established business when the property is "used exclusively by a business" for the enumerated purposes. Subsection (a)(2), however, apparently provides that property sought to be exempt by the expansion of an existing business must be "used exclusively" for the designated purposes. An existing business seeking to expand under subsection (a)(2) does not have the advantage of the magic words "by a business" modifying the exclusive use provision. Such a literal application of the language of the amendment would obviously fail to reflect the intent of the legislature and the voters in adopting the amendment. However, that would appear to be the result if the language "by a business" is to be given the weight and interpretation urged by KAP and adopted by the district court.

HCR 5047 was adopted along with numerous statutes, including K.S.A. 1989 Supp. 74-5001a *et seq.*, as part of a comprehensive economic development plan which included the establishment of a Department of Commerce to replace the existing Department of Economic Development. In 1985, the Institute for Public Policy and Business Research at the University of Kansas had been commissioned to make an economic development study for Kansas. The final report issued in June 1986, commonly referred to

as the Redwood-Krider report, made several recommendations including Recommendation 6, which read:

"Allow local taxing jurisdictions to give property tax abatements for new and expanding manufacturing facilities, research and development facilities, equipment and machinery, and for a limited scope of non-manufacturing facilities having a potential for job creation. The authority to grant the abatement should be detached from the issuance of industrial revenue bonds."

Nowhere, so far as we have been able to determine, was there any mention of the term "used exclusively" in the interim report available during the 1986 legislative session or in the final draft of the Redwood-Krider report. The language was apparently intentionally included in HCR 5047 by the legislature, which obviously was aware of the long history of litigation and case law which has consistently interpreted and defined the term "used exclusively" to apply to the combined use of the property by both the owner and actual occupant or physical user of the property.

Likewise, the legislative history of HCR 5047 does not reflect any discussion that the intent of the words "by a business" was to change the historical and well-established legal meaning of the term "used exclusively." The resolution was considered and discussed by the House Committee on Assessment and Taxation on several occasions, including March 27, 28, and 31, 1986, and by the Senate Committee on Assessment and Taxation on April 8, 1986. The Senate committee made amendments to HCR 5047 and the resolution as amended was adopted by the House of Representatives on April 10, 1986. The minutes of the various meetings at which HCR 5047 was considered reflect no discussion of any intent to change the longstanding legal definition and application of the term "used exclusively." If it had been the intention of the legislature to depart from the established law that rented property is not being "used exclusively" by the renter, it would have been a simple matter to use the necessary language to do so.

Although not mentioned in any of the five briefs filed in this court, additional support for the foregoing analysis is found in subsequent action of the legislature. In the 1989 session of the legislature, the House of Representatives passed a bill (H.B.

2529), which would specifically authorize a tax exemption to community-based not-for-profit economic development corporations for property leased by the corporation to a qualifying business for the purposes specified in Art. 11, § 13. The bill provides in part:

"Section 1. The following described property, to the extent herein specified, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

(a) *Property rented or leased,* with or without an option to purchase, *from a community based not-for-profit economic development corporation* organized under the laws of this state which is exempt from federal income taxation pursuant to section 501(c)(6) of the federal internal revenue code of 1986, as in effect on January 1, 1989, *which property is otherwise used exclusively for the purposes for which an exemption may be granted pursuant to section 13 of article 11 of the Kansas constitution. . . .*

. . . .

(c) Any ad valorem tax exemption granted pursuant to subsection (a) shall be in effect for not more than 10 calendar years after the calendar year in which the business *renting or leasing such property* commences its operations or the calendar year in which expansion of an existing business *renting or leasing such property* is completed, as the case requires." (Emphasis added.)

The fact that the House of Representatives found a need for such legislation for a not-for-profit owner, formed specifically for economic development purposes, to obtain tax exemption on rented or leased property certainly indicates that the legislature never intended Art. 11, § 13 to apply to property rented or leased by a private owner for profit purposes. The foregoing bill passed the House and was in the Senate Committee on Assessment and Taxation when the legislative session ended. Prior to passage of the foregoing bill, the House of Representatives held hearings on it and heard testimony from persons knowledgeable in the field.

In referring to H. B. 2529, Dick Compton, who is associated with the Ellis County Economic Development Corporation, one of the *amicus curiae* herein, stated:

"Candidly, in working with the drafters of this proposal [H.B. 2529], I and the other supporters involved were concerned that the legislature may not be receptive to a proposal that would include 'for profit' organizations. We concluded that our chances for legislative approval would be improved if we limited application to the several 'not for profit' organizations around

the state that are in place specifically for community development and improvement." Minutes, House Comm. Tax., Attachment 3, p. 3 (March 15, 1989).

Roger Kroh, Second Vice President of the Kansas Industrial Development Association and Director of the Lenexa Economic Development Council, stated on behalf of those organizations:

"Finally, let me say that in order for our cities to be most effective in luring companies to Kansas with our incentive packages, it would be ideal if tax exemptions could be given to companies leasing buildings from for-profit organizations. But, in our discussions with the Board of Tax Appeals and several legislators, there appears to be a sufficient amount of resistance to doing this." Minutes, House Comm. Tax. Attachment 5, p. 3 (March 15, 1989).

If the legislature had intended HCR 5047 and Art. 11, § 13 to apply to rented or leased property, there would have been no need for the House to consider and pass H.B. 2529.

Finally, it is contended that, as the explanatory statement submitted to the voters at the time of the submission of Art. 11, § 13 makes no distinction between owned and rented property, the voters intended both to be covered. The statement reads:

"*Explanatory statement.* This proposed amendment would authorize cities and counties to grant property tax exemptions for economic development purposes.

"A vote for the proposed amendment would allow the governing body of a city or county to exempt property of a new manufacturing, research and development or commodity or goods storing business or property necessary to facilitate the expansion of any such existing business if, as a result of such expansion, new employment is created, from property taxation for a period not to exceed 10 years.

"A vote against the proposed amendment will continue the existing law that the legislature is the only authority to grant property tax exemptions." L. 1986, ch. 423.

While it is true the statement makes no distinction between, or reference to, owned as opposed to rented property, it is equally true that it contains no indication of any intent to change long-standing law on when property is being "used exclusively" for purposes of tax exemption.

We have carefully considered all of the arguments and briefs of the parties and *amici curiae,* whether discussed at length herein or not, and conclude that Art. 11, § 13 does not grant tax exemption to property rented or leased for profit even though the

property is being used by the renter or lessee solely for one or more of the economic development purposes contained in the amendment.

The judgment of the district court reversing the order of the Kansas Board of Tax Appeals is reversed.