No. 89,030
No. 89,031

IN THE MATTER OF THE APPLICATION OF CENTRAL KANSAS
E.N.T. ASSOCIATES, P.A., FOR EXEMPTION OF AD VALOREM
TAXATION IN SALINE COUNTY, KANSAS.

69 P.3d 595

Opinion filed May 30, 2003.

*Jason L. Reed* and *Kenneth W. Wasserman*, of Norton, Wasserman, Jones &
Kelly, of Salina, were on the brief for appellant.

No appearance by appellee.

The opinion of the court was delivered by

DAVIS, J.: Central Kansas E.N.T. Associates, P.A. (E.N.T.) appealed the Kansas Board of Tax Appeals' (BOTA) order denying its motion for reconsideration on the question of whether its aircraft are exempt from taxation under the K.S.A. 79-201k. BOTA concluded that both aircraft were rented for personal use and, therefore, not regularly used exclusively to earn income under the terms of the statute. We transferred this case from the Court of Appeals pursuant to K.S.A. 20-3018(c).

E.N.T. owns a 1980 Piper Saratoga and a 1986 Piper Malibu, both of which are used in its business of providing health care for Kansas patients. E.N.T. applied for exemptions from ad valorem tax for both of its airplanes. The applications for exemption were handled separately before BOTA and were consolidated for purposes of this appeal. E.N.T. claimed that its airplanes were exempt from property and ad valorem taxes based upon K.S.A. 79-201k, which provides an exemption for "all aircraft actually and regularly used exclusively to earn income for the owner in the conduct of the owner's business or industry."

Dr. David A. Hendrick, explained E.N.T.'s use of the 1980 Piper Saratoga:

"I use this aircraft for flying to branch clinics. I serve patients through Central and Western Kansas. I specifically fly for patient care in Quinter, Kansas and in Norton, Kansas. I also have used the aircraft extensively for continuing education meetings, doing research at the library at Colorado School of Medicine in Denver and going to other practices for continuing education and practice management.

"Our corporation also currently owns for business purposes a Piper PA 46 1986 Malibu. I have made every attempt to be insurable to fly the Malibu for the same business purposes as my partners. Because of my relatively low flying hours, I have not been able to obtain insurance with my given number of flying hours. Attached is a copy of the letter from my insurance agent explaining this situation. I expect to be able to fly the Malibu and to sell the Saratoga sometime before the year 2002. In the meantime, our corporation is in the position of having to maintain two separate airplanes for the corporate officers to accomplish their business use of the two planes.

. . . .

"The aircraft is used for business purposes. We do rent it for some personal use to qualified corporate officers including Jerrold Cossette, M.D., Mark Bell, M.D. and myself with a rental charge of $100 per hour. To date this rental service

has been primarily to myself as I strive to accumulate the required 500 hours of flying time that would allow our corporation to sell the Saratoga and work solely with the Malibu. The proceeds from the plane rental is business income that helps defray the fixed costs of the ownership of the plane by the corporation."

Dr. Jerrold E. Cossette explained E.N.T.'s use of the 1986 Piper Malibu:

"We use this aircraft for flying to branch clinics. We cover most of Central and Western Kansas. We have branch offices in Colby, which is 200 miles away, Russell, Norton, Quinter, Concordia, Belleville, McPherson and Beloit. We also use the aircraft for continuing education and practice management.

. . . .

"The aircraft is used for business purposes and also as a rental plane. We do rent it for some personal use to qualified corporate officers including Mark G. Bell, M.D., Jerrold E. Cossette, M.D. and David A. Hendrick, M.D. with a rental charge of $150 per hour. This rental use is for the purpose of the Central Kansas Ear, Nose and Throat corporation. When it is rented for personal use, it is often used for other business ventures including farming and property management. The proceeds from the plane rental are business income that helps defray the fixed costs of the ownership of the plane. Obviously owning a plane for purposes of renting it is a business use of it."

BOTA requested additional information from E.N.T. regarding the number of times both planes were rented out for personal use. In 2001, the 1980 Piper Saratoga was flown 72 times, of which 12 were rented out for personal use. The remaining 60 flights were for business purposes. The 1986 Piper Malibu was flown 26 times in 2001, of which 5 were rented out for personal use. On average, the 1986 Piper Malibu is rented for personal use three or four times a year.

BOTA's Decision

BOTA found that 16.7% of the Saratoga flights in 2001 were rented out for personal use:

"4. The applicant uses the subject property to fly to branch clinics. The applicant acquired the subject property on February 27, 2000. The applicant allows the subject property to be rented out at $100/hour to qualified corporate officers. The applicant indicates that in 2001, the plane was flown 72 times. Of those flights, 12 or 16.7% were rented flights for personal use."

BOTA made substantially the same findings for the Malibu but noted that the Malibu was rented out for $150 per hour and 19.2% of the flights in 2001 were rented out for personal use. E.N.T. does not dispute these factual findings on appeal.

BOTA's tax exemption analysis as to the 1980 Piper Saratoga and the 1986 Piper Malibu was identical. BOTA noted that under the exemption statute, E.N.T. must use the aircraft "exclusively to earn income for the owner." BOTA cited *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 646, 693 P.2d 1187 (1985), for the proposition that the phrase "used exclusively" must be "only, solely, and purely for the purposes stated, and without participation in any other use." BOTA concluded E.N.T. had failed to make this showing:

"7. Upon examination of the application, the Board finds that the applicant does not use the subject property exclusively for the purpose of earning income for the owner in the conduct of the owner's business or industry. The applicant also uses the subject property for rental purposes, which is not a business purpose and is not exempt pursuant to K.S.A. 79-201k(b) *First*, and amendments thereto."

## Standard of Review

The Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, controls this court's review of an order from BOTA. K.S.A. 74-2426(c). Pursuant to K.S.A. 77-621(a), the burden of proving the invalidity of BOTA's action lies with E.N.T. K.S.A. 77-621(c) further specifies that this court may grant relief from a BOTA order only in the following cases:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

See *In re Tax Appeal of Panhandle Eastern Pipe Line Co.*, 272 Kan. 1211, 1222-24, 39 P.3d 21 (2002). This appeal requires that we interpret the provisions of K.S.A. 79-201k(b). The interpretation of a statute is a question of law, and our scope of review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

The rules relating to the interpretation of tax exemptions are familiar and well settled in Kansas:

"Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. [Citations omitted.] Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against exemption. [Citations omitted.] Where the language of a statute, in particular, is relied upon as creating an exemption from taxation, it must be strictly construed against the party claiming the exemption, and he must bring himself clearly within the exemption. [Citations omitted.] Strict construction, however, does not warrant unreasonable construction. [Citation omitted.]" *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs*, 245 Kan. 301, 304-05, 777 P.2d 843 (1989).

The burden of establishing an exemption from taxation is on the party claiming the exemption. *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties*, 246 Kan. 161, 166, 786 P.2d 1141 (1990).

## Discussion and Analysis

E.N.T. argues its aircraft are exempt from property and ad valorem taxes pursuant to K.S.A. 79-201k, which provides as follows:

"(a) It is the purpose of this section to promote, stimulate and develop the general welfare, economic development and prosperity of the state of Kansas by fostering the growth of commerce within the state; to encourage the location of new business and industry in this state and the expansion, relocation or retention of existing business and industry when so doing will help maintain or increase the level of commerce within the state; and to promote the economic stability of the state by maintaining and providing employment opportunities, thus promoting the general welfare of the citizens of this state, by exempting aircraft used in business and industry, from imposition of the property tax or other ad valorem tax imposed by this state or its taxing subdivisions. Kansas has long been a leader in the manufacture and use of aircraft and the use of aircraft in business and industry is vital to the continued economic growth of the state.

"(b) The following described property, to the extent herein specified, is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"*First.* For all taxable years commencing after December 31, 1982, all aircraft actually and regularly used exclusively to earn income for the owner in the conduct of the owner's business or industry."

The 1988 amendment to K.S.A. 79-201k modified the last paragraph of the section with the following italicized language: "*First.* For all taxable years commencing after December 31, 1982, all aircraft actually and regularly used exclusively *to earn income for the owner* in the conduct of a *the owner's* business or industry." L. 1988, ch. 374, sec. 3. The March 2, 1988, committee minutes of the House Committee on Taxation, which considered the 1988 amendment in House Bill No. 3074, recorded the testimony of Douglas Martin, the Shawnee County Counselor. Martin had argued a case before the Court of Appeals, *Kenneth Godfrey Aviation, Inc. v. Smith,* 12 Kan. App. 2d 434, 746 P.2d 1068 (1987), *rev. denied* 242 Kan. 903 (1988), which interpreted the pre-1988 version of K.S.A. 79-201k. The minutes summarized Martin's testimony as follows:

"[Martin] discussed the major concerns raised by the Kansas Court of Appeals in the *Godfrey Aviation* case because it was held that any aircraft held in the name of a corporation (even if only one) would be eligible for exemption. Mr. Martin believes that if H.B. 3074 is passed as it is now written, more than 95% of all aircraft in the state would become exempt before the end of the year." Minutes, House Comm. on Taxation, March 2, 1988 (H.B. 3074).

Martin's written submission to the House Committee on Taxation contained the following:

"One of the major concerns raised by the Kansas Court of Appeals in oral arguments in the *Godfrey Aviation* case was that any aircraft held in the name of a corporation (even if only one) would be eligible for the tax exemption using the arguments of Godfrey and Smith even if the corporation only leased the aircraft to the owner of the corporation for recreational use. Thus, the Court held that the use of the lessee and the lessor had to be for business. There had to be more business use than just the leasing of aircraft. Otherwise, all aircraft would be eligible for tax exemption merely by being placed in the name of a corporation and being leased-back to the owner of the corporation." Minutes, House Comm. on Taxation, March 2, 1988 (H.B. 3074).

A copy of the *Godfrey Aviation* opinion was included in the House Committee on Taxation minutes.

The Court of Appeals in *Godfrey Aviation* interpreted the pre-1988 amendment version of K.S.A. 79-201k. See K.S.A. 79-201k (Ensley 1984); 12 Kan. App. 2d at 435. Taxpayers William Smith and Godfrey Aviation owned airplanes which were rented to the flying public for business or personal reasons. Smith owned one airplane, which he leased to Godfrey Aviation for use in its fleet of airplanes available to the public. When Smith flew his airplane, it was exclusively for business purposes.

In *Godfrey Aviation*, BOTA determined that the airplanes owned by the taxpayers were not exempt from ad valorem taxes. The district court reversed BOTA, and the case was appealed to the Court of Appeals.

*Godfrey Aviation* identified the following precise issue, which was highlighted by the respective arguments by the parties:

"Godfrey Aviation and Smith used their airplanes exclusively in the conduct of business. The only question is whether the renters' use of the airplanes for non-business purposes is to be considered in determining the exclusive nature of the use. The County claims that, because renters used the airplanes for non-business purposes, the airplanes were not being used exclusively in a business and thus did not qualify for exempt status under K.S.A. 79-201k. Godfrey Aviation and Smith claim their use of the airplanes alone is determinative of the right to an exemption." 12 Kan. App. 2d at 436.

The court in *Godfrey Aviation* rejected the taxpayers' arguments and determined that, in deciding whether a use is exclusive, the court must "consider not only the use of the property being made by the one claiming the exemption, but also all uses being made of the property." 12 Kan. App. 2d at 437. The Court of Appeals relied upon this court's precedents in *In re Board of Johnson County Comm'rs*, 225 Kan. 517, 592 P.2d 875 (1979), and *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 694 P.2d 462 (1985). According to the Court of Appeals in *Godfrey Aviation*, the Supreme Court precedents were evidence of a doctrine of "simultaneous uses." If one of the uses is not covered by the tax exemption statute, the exemption does not apply. 12 Kan. App. 2d at 438-39.

In applying the rule, *Godfrey Aviation* determined that there were two simultaneous uses for the airplanes: "(1) by the renters for non-business purposes, and (2) by the owners collecting a rental fee for the use of the airplanes, both of which must be considered in determining the availability of the exemption statute." 12 Kan. App. 2d at 439. The court found that the "renters' use of the airplanes for non-business purposes makes the property ineligible for tax exemption under K.S.A. 79-201k because the airplanes were not used exclusively for business." 12 Kan. App. 2d at 439.

E.N.T. argues that the 1988 amendment to K.S.A. 79-201k, see L. 1988, ch. 374, sec. 3, provided that an owner of an aircraft may earn income by renting his or her aircraft without losing the entitlement to the K.S.A. 79-201k exemption. According to E.N.T., the 1988 amendment was intended to lessen the severity of denying the exemption to an owner who rents the aircraft to another for personal reasons and the 1988 amendment changed the focus from business use to use for the earning of income.

E.N.T. points to Martin's testimony before the House Committee on Taxation in support of its contention that the 1988 amendment to K.S.A. 79-210k erased the Court of Appeals ruling in *Godfrey Aviation*. While the minutes reflect Martin's belief that the 1988 amendment would bring E.N.T. within the exemption, Martin's belief and interpretation of the amendment is not controlling. The 1988 amendment still requires exclusive use and did nothing to modify the "simultaneous uses" reasoning set forth in *Godfrey Aviation*, 12 Kan. App. 2d at 438-39.

BOTA correctly interpreted the 1988 amendments to K.S.A. 79-201k. Contrary to the arguments of E.N.T., the issue in this case is not whether the planes are used exclusively to earn income. Rather, the issue is whether E.N.T.'s airplanes are actually and regularly used exclusively to earn income for the owner in the conduct of the owner's business or industry. *Godfrey Aviation*, 12 Kan. App. 2d 434, remains the law in Kansas and was not changed by the 1988 amendment.

The arguments before the Court of Appeals in *Godfrey Aviation* are similar to E.N.T.'s arguments before this court. The arguments in *Godfrey Aviation* emphasized that its airplanes were used ex-

clusively in the conduct of its business, thereby bringing the airplanes within the exemption provided under the pre-1988 amendment version of K.S.A. 79-201k. See *Kansas Ave. Properties,* 246 Kan. at 170 ("There was no question but that as far as Godfrey Aviation, Inc., was concerned, its airplanes were being used solely for its business purpose."). However, this argument was unavailing because the public was renting the airplanes from Godfrey Aviation for personal reasons. *Godfrey Aviation,* 12 Kan. App. 2d at 439.

Not unlike in *Godfrey Aviation,* E.N.T. argues that under the present version of K.S.A. 79-201k, its airplanes are used exclusively to earn income in the conduct of its business. The undisputed evidence establishes that E.N.T. rents its aircraft for some personal use. Thus, not unlike in *Godfrey Aviation,* there are two simultaneous uses, one which fits the provisions of K.S.A. 79-201k and the other which fails to meet the requirements of the statute. Under these circumstances, the aircraft for which exemptions are sought by E.N.T. are not "actually and regularly used *exclusively* to earn income for the owner in the conduct of the owner's business or industry." (Emphasis added.) K.S.A. 79-201k. Had the legislature intended to reach the result desired by E.N.T., the legislature would have deleted the word "exclusively." We, therefore, affirm BOTA's denial of the tax exemption.

Affirmed.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned■