(114 P.3d 176)

No. 92,407

IN THE MATTER OF THE APPLICATION OF K.S.U. FOUNDATION FOR EXEMPTION FROM AD VALOREM TAXATION IN RILEY COUNTY, KANSAS.

Opinion filed June 24, 2005.

*S. Lucky DeFries* and *Jeffrey A. Wietharn*, of Coffman, DeFries & Northern, P.A., of Topeka, for appellant Kansas State University Foundation.

*Michael A. Montoya*, of Michael A. Montoya, P.A., of Salina, for appellee Riley County.

Before RULON, C.J., HILL and CAPLINGER, JJ.

RULON, C.J.: The Kansas State University Foundation (Foundation) appeals the denial of its application for an exemption from ad valorem taxation under K.S.A. 2004 Supp. 79-201 *Second* by the Board of Tax Appeals (BOTA). We affirm.

The underlying facts of this case are undisputed, as the parties stipulated to the pertinent facts during the reconsideration hearing before BOTA.

The Foundation is organized as a not-for-profit, charitable organization, which is tax exempt under the Internal Revenue Code, 26 U.S.C. § 501(c)(3) (2000). The Foundation's charitable purpose involves eliciting private financial contributions, which are applied to the support and extension of the educational, research, and public service goals of Kansas State University (KSU), which is a not-for-profit, charitable organization, as that term is applied in 26 U.S.C. § 501(c)(3).

At the request of KSU, the Foundation purchased a commercial building located at 5980 Corporate Drive, Manhattan, Kansas, taking a mortgage loan of $825,000. The monthly payments on the loan are $6,311.20. The Foundation planned to lease the property to KSU to house the university's printing operations.

In February 2003, the Foundation and KSU signed a lease agreement. Under the terms of the lease, KSU would pay 12 monthly payments of $6,417.12, plus a special annual assessment of public utilities in the amount of $7,893.28, for a total annual lease payment of $84,898.72. The lease terminates on December 31, 2007, 5 years and 16 days after the lease commenced. While the lease agreement provided for a 6-month hold-over period, there is no lease provision for an automatic renewal of the lease at the expiration of the lease term.

The Foundation calculated the monthly lease payment by adding the Foundation's administrative costs ($105.02) to the mortgage payments the Foundation was making every month for the purchase of the property ($6,311.20). Since the lease commenced, KSU has continued to use the property to house its printing departments, which do not provide commercial printing services. The

parties acknowledge the use of the property by KSU is educational, within the meaning of K.S.A. 2004 Supp. 79-201 *Second.*

On April 2, 2003, the Foundation requested an exemption for ad valorem taxation for the property in question under K.S.A. 2004 Supp. 79-201 *Second.* When the exemption was denied, the Foundation filed a motion for reconsideration, seeking a hearing with BOTA. BOTA held a hearing, allowing the parties to present their respective positions in argument, after which BOTA affirmed its prior ruling denying the exemption in a 2-1 decision.

In the motions and arguments before BOTA, the Foundation declared its intent to renew the lease with KSU until the mortgage had been paid. Thereafter, the Foundation intended to extend the lease on purely a cost basis or to deed the building to KSU. Importantly, no provision within the lease requires either party to adhere to these stated intentions, however.

The sole issue in this appeal concerns the applicability of the exemption from ad valorem taxation provided in K.S.A. 2004 Supp. 79-201 *Second.* Generally, appellate review of tax decisions by the BOTA is limited by the Act for Judicial Review and Civil Enforcement of Agency Actions. See K.S.A. 77-621. However, as the parties have stipulated to the underlying facts, the only question presented to the BOTA and to this court, on review, involves statutory interpretation, which is a question of law. See *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 81, 761 P.2d 1261, *rev. denied* 244 Kan. 738 (1988).

BOTA is a specialized agency created with the purpose of deciding taxation issues. Consequently, appellate courts generally give considerable weight and deference to BOTA's decisions when the agency is acting within its sphere of expertise. Nevertheless, a question of law is subject to unlimited review, and this court is not bound to adopt BOTA's interpretation of a tax statute, if it is deemed erroneous. See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 749, 973 P.2d 176 (1999).

Kansas courts have adopted a number of principles related to the construction of a tax exemption: (1) when the legislative intent is in doubt, constitutional and statutory exemptions from taxation must be strictly construed in favor of taxation; (2) the burden of

establishing the applicability of an exemption from taxation lies with the party claiming the exemption; (3) when property taxation is at issue, the issue is whether the property is *exclusively* used for an exempt purpose, unless the statute indicates a more permissive exemption; and (4) *exclusive use means* "the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use." See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. at 751.

But, the above principles are clearly secondary to the clear and unambiguous intent of the legislature which precludes "judicial blacksmithing" of properly promulgated legislation. To the extent possible, this court will effect the intent of the legislature as stated in the plain language of the statutory scheme enacted. In determining the legislature's intent, courts must consider the entire act, not a single provision, in isolation. See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. at 749.

The Foundation claims an exemption from ad valorem taxation under K.S.A. 2004 Supp. 79-201 *Second*, which provides in pertinent part:

"*Second.* All real property, and all tangible personal property, actually and regularly used *exclusively* for literary, educational, scientific, religious, benevolent or charitable purposes, including property used exclusively for such purposes by more than one agency or organization for one or more of such exempt purposes. . . . [T]his exemption shall not apply to such property, not actually used or occupied for the purposes set forth herein, nor to such property *held or used as an investment* even though the income or rentals received therefrom is used wholly for such literary, educational, scientific, religious, benevolent or charitable purposes. . . . This exemption shall not be deemed inapplicable to property which would otherwise be exempt pursuant to this paragraph because an agency or organization: (a) Is reimbursed for the provision of services accomplishing the purposes enumerated in this paragraph based upon the ability to pay by the recipient of such services; or (b) is reimbursed for the actual expense of *using* such property for purposes enumerated in this paragraph; or (c) uses such property for a nonexempt purpose which is *minimal in scope and insubstantial in nature if such use is incidental to the exempt purposes of this paragraph*; or (d) charges a reasonable fee for admission to cultural or educational activities or permits the use of its property for such activities by a related agency or organization, if any such activity is in furtherance of the purposes of this paragraph." (Emphasis added.)

(The omitted portions of this statutory exemption pertain to religious organizations, which are not applicable in this case. The exemption, as quoted above, is identical to the version of the statute which existed following the 1986 amendments. The language dealing with religious organizations was added by amendment in 1997. See L. 1986, ch. 369, sec. 1; L. 1997, ch. 122, sec. 2.).

Research has revealed no cases involving K.S.A. 79-201 *Second*, which are analogous to the facts presented here. As a result, the Foundation attempts to analogize its lease arrangement with KSU to the lease arrangement between the University of Kansas School of Medicine—Wichita Medical Practice Association (WMPA) and the Wichita Primary Care Center (Center) in *In re Tax Appeal of Univ. of Kan. School of Medicine*. WMPA, a tax-exempt organization, leased property to a legally separate, tax-exempt entity, the Center, which offers primary medical services to low-income and medically underserved patients. The lease agreement demanded monthly payments of $3,644 plus applicable tax assessments, which was well below the market rate. WMPA sought an exemption from ad valorem taxation under K.S.A. 79-201 *Ninth*, but BOTA denied the exemption based upon cases requiring exclusive exempt use of the property.

On appeal, our Supreme Court reversed BOTA's decision, noting that K.S.A. 79-201 *Ninth* does not require "exclusive use" but actual use " 'for the predominant purpose of providing humanitarian services.' " 266 Kan. at 745 (quoting K.S.A. 79-201 *Ninth*). After reviewing the legislative history of ad valorem tax exemptions in Kansas, our Supreme Court noted the adoption of the standard in K.S.A. 79-201 *Ninth* represented a substantial shift in public policy. The legislature broadened the scope of the exemption by permitting an exemption if the dominant use of the property was a stated exempt use, rather than the exclusive use. At the same time, the legislature protected the State from abuse because of the broader exemption by requiring a party seeking an exemption to satisfy additional criteria. 266 Kan. at 757-69.

In holding that WMPA was entitled to an exemption, in spite of the profit WMPA retained as a result of the lease agreement with the Center, our Supreme Court specifically distinguished prior

case law dealing with exclusive use of the property based upon the language of the particular statutory exemption sought, concluding:

"Moreover, the provisions of K.S.A. 79-201 *Second* exempting property actually and regularly used exclusively for literary, educational, scientific, religious, benevolent, or charitable purposes expressly prohibited tax exemption where 'such property [was] held or used as an investment even though the income or rentals received therefrom is used wholly for such literary, educational, scientific, religious, benevolent or charitable purposes.' The legislature did not include this prohibition in enacting K.S.A. 79-201 *Ninth*, which suggests that leasing under limited circumstances is permitted and unity of ownership is not a condition for exemption under K.S.A. 79-201 *Ninth*." 266 Kan. at 759.

The Foundation similarly argues that K.S.A. 2004 Supp. 79-201 *Second* provides that an organization does not lose a tax-exempt status by receiving reimbursement for expenses of using the property. See also K.S.A. 2004 Supp. 79-201 *Second* (b). However, a material distinction is drawn between reimbursement for the expenses of *using* the property and the expenses of *acquiring* the property. If an organization is completely reimbursed for the acquisition of a material asset, such organization profits in the ownership of the asset at no cost. In light of the clear prohibition against using the property for *investment purposes* and the duty to construe tax exemptions strictly in favor of taxation, the Foundation's argument, in this regard, is unpersuasive. See K.S.A. 2004 Supp. 79-201 *Second; In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. at 755.

More persuasive is the Foundation's argument that the legislature clearly permitted simultaneous use of the subject property and established that incidental, nonexempt use of the real property does not cause an entity to lose its tax exemption.

"This exemption shall not be deemed inapplicable to property which would otherwise be exempt pursuant to this paragraph because an agency or organization: . . . (c) uses such property for a nonexempt purpose which is minimal in scope and insubstantial in nature if such use is incidental to the exempt purposes of this paragraph." K.S.A. 2004 Supp. 79-201 *Second* (c).

Because the statutory provisions under scrutiny specifically *prohibits* holding the property for *investment purposes*, such use of the property may not be deemed "minimal in scope and insub-

stantial in nature," within the meaning of K.S.A. 2004 Supp. 79-201 *Second.* Typically, where the owner of property subject to an exemption dispute leases the property to another entity, the owner's use of the property is deemed financially motivated and, thus, an investment. See *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties,* 246 Kan. 161, 176-77, 786 P.2d 1141 (1990) (holding that tax exemption does not apply to leased property even when property is being used for exempt purposes); *In re Board of Johnson County Comm'rs,* 225 Kan. 517, 522-23, 592 P.2d 875 (1979) (holding that property owned by a nontax-exempt entity and leased for profit to a qualifying tax-exempt entity does not qualify for exemption).

Whether the organizations using the property possess a tax-exempt character is relatively immaterial because it is the use of the property, not the character of the owner, which determines the applicability of an ad valorem tax exemption. See *In re Board of Johnson County Comm'rs,* 225 Kan. at 520; see also *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 42, 542 P.2d 278 (1975) ("[W]here public property is not involved, a tax exemption must be based upon the use of the property and not on the basis of ownership alone.").

However, the nature of the lease agreement before us distinguishes such lease from the one considered in *Board of Wyandotte County Comm'rs* and *In re Board of Johnson County Comm'rs.* Under the facts of *In re Board of Johnson County Comm'rs,* the lessee was a tax-exempt organization using the leased property for an exempt purpose under the statute, but, because the owner of the property was simultaneously using the property for profit, the property was being used for both an exempt purpose and nonexempt purpose. Consequently, the property did not qualify for an "exclusive use" ad valorem tax exemption. 225 Kan. at 522-23.

In *Board of Wyandotte County Comm'rs,* the parties presented the court with a converse factual situation. A tax-exempt entity owned property, which was leased to a nonexempt entity for a nonexempt purpose. The property owner then applied the proceeds from the lease to the owner's function as a tax-exempt organization. Again, our Supreme Court concluded the use of the

property was financial and not exempt, even if the proceeds of the lease were applied to purposes which would qualify for tax exemption. 246 Kan. at 176-77.

In contrast, this case represents two tax-exempt entities, one of which is clearly using the property for an exempt educational purpose and the other is arguably receiving no profit from the lease terms, because the lease payments do not provide any income above the mortgage payment, administrative costs, and special utilities assessment. But, although the facts of the case are distinguishable, the analysis in *Board of Wyandotte County Comm'rs* is persuasive.

Here, the lease payments provide the Foundation with the means to pay for the ownership interest in this real property. As the mortgage is paid and the building presumably appreciates in value, the ownership interest becomes a financial asset. If KSU breaches the lease or if the parties do not renew the lease at the end of the lease term, the Foundation can sell the building, pay off the remaining mortgage, and keep the equity obtained through KSU's lease payments. Under this lease arrangement, we conclude the Foundation's only use of the property is a financial one.

The Foundation claims an intent to deed the property to KSU or to lease the property to KSU at cost after the mortgage is paid, but the contract does not require the Foundation to deed the property to KSU. Additionally, any agreement to continue leasing the property to KSU at cost would still provide the Foundation with ownership of a financial asset for nothing. We conclude the Foundation's use of the property currently is an investment, which is specifically prohibited by K.S.A. 2004 Supp. 79-201 *Second*. This investment use of the property cannot be deemed merely incidental and inconsequential to the actual use of the property by KSU for educational purposes. There are two separate and distinct uses of the property in question: KSU is using the property in an exempt manner; the Foundation is using the property as a financial asset.

The facts presented in this case present a close question, which the legislature arguably should revisit. However, because this court's construction of an exemption must be narrow in favor of taxation, absent clear legislative intent to the contrary, and because

the decisions of BOTA are entitled to deference by the appellate courts, this court cannot conclude the Foundation has carried its burden of persuading this court of the applicability of an ad valorem tax exemption under K.S.A. 2004 Supp. 79-201 *Second.* See *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. at 751.

Affirmed.