(830 P.2d 60)

No. 66,713

IN THE MATTER OF THE APPLICATION OF PRESBYTERIAN MANOR, INC., FOR EXEMPTION FROM AD VALOREM TAXATION IN DOUGLAS COUNTY, KANSAS.

Opinion filed March 27, 1992.

*Jack D. Flesher* and *Colleen M. Miller,* of Bever, Dye, Mustard & Belin, of Wichita, for appellant.

*Robert W. Fairchild, Patricia R. Hackney,* and *Nancy Walker,* of Riling, Burkhead, Fairchild & Nitcher, Chartered, of Lawrence, for appellee.

Before GERNON, P.J., ELLIOTT, J., and DAVID PRAGER, Chief Justice Retired, assigned.

ELLIOTT, J.: Lawrence Presbyterian Manor, Inc., (Manor) appeals the Board of Tax Appeals' (BOTA) denial of an ad valorem tax exemption under K.S.A. 79-201b *Fifth.*

We reverse.

The following short factual history seems to be undisputed: The Manor is a Kansas nonprofit corporation dedicated to providing housing and associated services to the elderly. Its five-story building was completed in late 1976, having been constructed with private donations and industrial revenue bonds. The original building contained apartments for residents, a chapel, dining and meeting rooms, and a health center. In 1982-83, the Manor pur-

chased adjoining land and constructed duplexes for residents desiring more independent living arrangements.

The Manor charges residents an entrance fee and, for those living in the apartments, a monthly occupancy fee. Additionally, residents are charged a daily fee should nursing care be required. Residents living in the duplexes pay a life use fee, 80% of which is amortized over a 15-year period and refunded should a resident die or move. Duplex residents also pay monthly maintenance fees and daily fees for nursing care if required. The Manor maintains a "Good Samaritan" fund for residents who become financially unable to pay their full fees.

The Manor is operated by the governing body for the United Presbyterian Church in Kansas and Missouri. The governing body operates 13 similar homes for the elderly in those two states.

In 1984, the Manor filed for a tax exemption on the duplex additions pursuant to K.S.A. 79-201b *Fifth*; the original five-story building had been exempted from taxation because it had been constructed with industrial revenue bond proceeds. That industrial revenue bond exemption expired in 1986, at which time the Manor filed for a tax exemption on the original building and on a vehicle owned by the Manor. BOTA consolidated the two applications.

BOTA ruled the property should be exempted under K.S.A. 79-201 *Ninth*; exemption under 79-201b *Fifth* was denied.

Both the Manor and the County filed for rehearing and both filed for judicial review. The County claimed the Manor should not have been granted any exemption at all, and the Manor claimed it should have been granted exemption under 79-201b *Fifth* as requested.

The district court affirmed BOTA's order, denying both parties' claims on review.

The sole issue on appeal is whether the Manor satisfies the elements necessary for exemption under 79-201b *Fifth*.

*The Merits*

K.S.A. 79-201b *Fifth* exempts the following property used in providing housing for the elderly from all ad valorem taxes:

"All real property and tangible personal property, actually and regularly used exclusively for housing for elderly persons, which is operated by a corporation organized not for profit under the laws of the state of Kan-

sas . . . in which charges to residents produce an amount which in the aggregate is less than the actual cost of operation of the housing facility *or* the services of which are provided to residents at the lowest feasible cost, taking into consideration such items as reasonable depreciation and interest on indebtedness and contributions to which are deductible under the Kansas income tax act; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such corporation and used exclusively for the purpose of such housing."

The parties agree that the Manor is a Kansas nonprofit corporation.

When considering an exemption to taxation, taxation is the rule and exemption, the exception. See *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties*, 246 Kan. 161, 166, 786 P.2d 1141 (1990). Thus, on appeal, the Manor has the burden of rebutting the presumption of validity attaching to BOTA's actions.

But while an agency's interpretation of a statute should be given weight and consideration, final construction of a statute rests with the courts. As a result, we are free to make our independent construction of the meaning of K.S.A. 79-201b *Fifth*. See *National Gypsum Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 682, 772 P.2d 786 (1989).

A brief history of the evolution of the statute in question would include the following:

1. In 1965, our Supreme Court held a nonprofit home for the elderly to be tax exempt, even though most residents had paid an entry fee and were paying monthly charges. *Topeka Presbyterian Manor v. Board of County Commissioners*, 195 Kan. 90, 402 P.2d 802 (1965). In doing so, the court recognized that traditionally, special concern had been shown for the elderly (195 Kan. at 97) and recognized that relief of poverty is not a condition precedent to charitable assistance (195 Kan. at 98).

2. In 1973, the Supreme Court overruled *Topeka Presbyterian Manor*, holding that to be charitable, gifts to the needy must be made either free or at charges which are nominal. *Lutheran Home, Inc. v. Board of County Commissioners*, 211 Kan. 270, 278, 505 P.2d 1118 (1973).

3. Shortly thereafter, the Special Committee on Assessment and Taxation was asked to review state policy on property tax exemptions and to study property tax exemptions for special care housing as to uniformity and consistency. See Legislative Re-

search Dept. Memo to Special Committee on Assessment and Taxation, June 25, 1985.

That committee recommended legislation to exempt "such housing" when provided by a state-licensed, nonprofit corporation "when contributions to the corporation are deductible under the Kansas Income Tax Act, and payments by the residents as a group provided less than the total operating costs of the facility." Legislative Research Dept. Memo, June 25, 1985, at 2.

4. K.S.A. 79-201b was enacted by the legislature in 1975. L. 1975, ch. 495, § 3.

The title of 79-201b does not make any mention of *low-income* elderly. It mentions only "housing" for elderly persons. K.S.A. 79-201b *Fourth* does mention housing for the elderly and handicapped of limited or lower income, where financing of the facilities was obtained under federal statutes.

By mentioning only housing for the elderly in the title of 79-201b, the legislature, at least impliedly, adopted the broader concept of charity espoused in *Topeka Presbyterian Manor*, 195 Kan. at 97-98.

The central question around which this appeal revolves is whether tax deductible contributions to the Manor should be included in revenues in determining whether "charges to residents" produce an amount less than the actual cost of operations.

The Manor argues in the negative; the County contends that the contributions should "clearly" be included in determining revenues.

Simply put, if contributions are included in the equation, the Manor loses; if they are excluded, the County loses.

We have several problems with the County's position. First is the language of the statute itself. The granting/exemption clause of 79-201b *Fifth* does not talk in terms of revenues or net operating revenues. It speaks only of "charges to residents." Had the legislature intended the result urged by the County, it could have clearly stated it meant "charges to residents plus tax deductible contributions."

Second, the County urges the addition of the phrase "and contributions to which are deductible under the Kansas income tax act" following the alternative ground for exemption clause

(lowest feasible cost) supports its argument for including contributions in the equation. We disagree.

We feel the legislature intended to treat the various nonprofit entities discussed in 79-201b in a consistent and uniform manner. We are unable to attribute an intent on the part of the legislature to treat adult care homes (K.S.A. 79-201b *Second*) and private childrens' homes (K.S.A. 79-201b *Third*) differently than housing for the elderly (K.S.A. 79-201b *Fifth*) and group housing for mentally retarded persons (K.S.A. 79-201b *Sixth*).

The pertinent wording of subsections *Second* and *Third* is as follows:

"charges to residents for services of which produce an amount which in the aggregate is less than the actual cost of operation of the home or the services of which are provided to residents at the lowest feasible cost, taking into consideration such items as reasonable depreciation and interest on indebtedness *comma* and contributions to which are deductible under the Kansas income tax act." (Emphasis added.)

The emphasized comma in subsections *Second* and *Third* is absent in the language of subsections *Fifth* and *Sixth*. With the comma in place, the flow of the language of the paragraph clearly reflects the apparent legislative intent to grant a tax exemption "when" contributions are deductible and when payments by the residents as a group provide less than the operating costs of the facility. See Legislative Research Dept. Memo, June 25, 1985, at 2.

Third is our concern for the impact of the County's position in the real world of nonprofit organizations.

To be prudently operated, the directors of a nonprofit organization must ensure its continuing viability. In order to do that, the nonprofit organization must have a positive balance sheet. It must rely on contributions to offset the shortfall from "charges to residents."

The County's position—requiring total revenues, including tax deductible contributions, to be less than actual costs of operations—is simply unrealistic and would, in effect, deny tax-exempt status to virtually all nonprofit corporations running housing for the elderly. That cannot have been the legislature's intent.

Accordingly, we hold that tax deductible contributions to the Manor are not to be included in figuring the amount produced by "charges to residents" in K.S.A. 79-201b *Fifth*.

The County contends, and the Manor agrees, that in determining the charge to residents/cost of operation equation, we should look at the entire 11-year life of the Manor. The Manor's method of calculating the actual cost of operating the facility is not seriously disputed by the parties.

A review of the Manor's financial statements shows that the Manor calculates its operational revenue (charges to residents) by totaling room and board charges, subtracting the amount residents are financially unable to pay, and then adding entrance fees and other resident service fees. This amount failed to cover the cost of operations in 8 of the individual 11 years the Manor had been in operation prior to BOTA's decision (1977-88). The cumulative totals for the 11-year life of the Manor show a shortfall of some $411,000 of charges to residents compared with actual cost of operations.

The Manor has met its burden of establishing a tax exemption under K.S.A. 79-201b *Fifth*.

Because of our holding on the charge to residents/actual cost of operation issue, we need not address the alternative means of tax exemption (services provided to residents at the lowest feasible cost).

Reversed.