(966 P.2d 708)
No. 77,523

LAKEVIEW VILLAGE, INC., *Appellee*, v. BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, *Appellant*.

Opinion filed October 30, 1998.

*David M. Cooper* and *William G. Howard*, assistant county counselors, and *Donald D. Jarrett*, chief counsel, of Board of County Commissioners of Johnson County, for appellant.

*Robert J. O'Connor*, of Morrison & Hecker, L.L.P., of Wichita, and *Robert J. Vancrum*, of the same firm, of Overland Park, for appellee.

Before BRAZIL, C.J., ELLIOTT and GERNON, JJ.

ELLIOTT, J.: The Board of County Commissioners of Johnson County (Board) appeals the order of the district court which re-

versed the Board of Tax Appeals' (BOTA) finding that Lakeview Village (Lakeview) was not exempt from ad valorem taxation pursuant to K.S.A. 79-201b *Second* and *Fifth*.

We reverse.

This case is long and complex. It involves tax appeals dating back to 1984. It involves two decisions issued by BOTA, one in 1993 and one in 1995. In both cases, BOTA denied Lakeview's application for tax exemption.

Lakeview Village is a continuing care community which provides a full range of housing, residential services, and health care options to its residents. In order to be granted exemption from ad valorem taxes, K.S.A. 79-201b *Second* requires that Lakeview be licensed pursuant to K.S.A. 39-923 and that it be used exclusively for adult care home purposes. K.S.A. 79-201b *Fifth* has no such licensing requirement but provides for exemption for property used exclusively for housing for elderly persons.

Both statutes require that Lakeview be a not-for-profit corporation authorized to do business in Kansas. Additionally, Lakeview must be an organization to which contributions are deductible under the Kansas Income Tax Act. Finally, Lakeview must charge its residents "an amount which in the aggregate is less than the actual cost of operation of the home [or housing facility] or the services of which are provided to residents at the lowest feasible cost." K.S.A. 79-201b *Second* and *Fifth*.

In both the 1993 and 1995 decisions, BOTA found that Lakeview was a licensed nursing care facility and that it was used for housing elderly persons. BOTA also found that Lakeview was a not-for-profit corporation organized under Kansas law, and that contributions to Lakeview were tax deductible. BOTA reviewed Lakeview's audited financial records, however, and concluded that Lakeview was operating at a profit and that it did not operate at its lowest feasible cost.

In determining whether Lakeview was operating at its lowest feasible cost, BOTA considered the criteria established in Rev. Rul. 72-124, which provides guidance for determining the tax exempt status of retirement homes. The ruling states that the elderly have a need for housing, health care, and financial security. That need

will be met if the organization provides residential facilities that are specifically designed to meet some combination of physical, emotional, recreational, social, religious, and similar needs of aged persons. Rev. Rul. 72-124.

In order to meet the need for financial security, an organization must be committed to a written or de facto policy of caring for residents who become unable to pay. Second, an organization must provide its services to the aged at the "lowest feasible cost." If there is doubt concerning whether an organization operates at its lowest feasible cost, the reviewing entity should consider whether an organization has an established policy of caring for residents who cannot pay and whether it offers certain rooms at a lesser charge based on a person's ability to pay. The need for health care will be met if the organization provides some form of health care for its residents. Rev. Rul. 72-124.

Having easily found that Lakeview meets the housing and health care needs of its residents, BOTA's ruling focused almost exclusively on whether Lakeview meets the need for financial security for the elderly and whether it fulfills a community need. BOTA found that while Lakeview has a de facto policy of maintaining residents who cannot pay their monthly service fee, it accepts no Medicaid residents; it offers no rooms at a lesser charge; it will not admit residents who cannot pay the entrance endowment fee; it will not accept charity cases; and that in fact, Lakeview appeared to be tightening its admission policy to ensure that every resident would be able to pay all fees throughout his or her life.

BOTA went on to state that Rev. Rul. 72-124 implies that in order to be exempt from income taxation as a charitable organization, there must be a community need for the organization. BOTA found that providing services for healthy, financially secure adults for whom no government assistance is required is not a public benefit. BOTA also stated that the people who actually *need assistance* are denied admission to Lakeview.

In 1995, BOTA again denied Lakeview's application for tax exempt status after finding that Lakeview continued to operate at a profit and that it did not operate at its least feasible cost. Lakeview argued that its fund balance was actually in the negative when other

expenses such as volunteer hours and interest were deducted. Lakeview argued that this court has held that contributions which defray operating costs which the organization would otherwise incur are tax deductible. See *In re Tax Exemption Application of Presbyterian Manor, Inc.*, 16 Kan. App. 2d 710, 830 P.2d 60 (1992).

BOTA rejected this argument and found that converting every volunteer hour expended to an expense and deducting these expenses—$323,163.46—from income charges was simply not supported by K.S.A. 79-201b *Second* or *Fifth* or by this court's ruling in *Presbyterian Manor*. BOTA also found that "Lakeview's preferential treatment toward 'insiders' and, most specifically, its policy of refusing to waive or reduce entrance fees to economically disadvantaged individuals casts a dark shadow on whether Lakeview complies with the 'lowest feasible cost test' in Revenue Ruling 72-124."

BOTA's two rulings were consolidated for purposes of judicial review. It appears, however, that the district court focused almost exclusively on BOTA's 1995 ruling in reaching its decision. The court largely adopted BOTA's findings of fact and held that BOTA's decision which concluded that Lakeview was operating at a profit was supported by substantial competent evidence.

The court went on, however, to hold that BOTA erred in finding that Lakeview was not operating at its lowest feasible cost. Specifically, the court held BOTA erred by focusing almost exclusively on financial criteria in reaching its decision. Additionally, the court held that BOTA erred by considering whether Lakeview met a community need and by not considering the financial value of volunteer hours.

Because the district court upheld BOTA's finding that Lakeview operated at a profit, the only issue to be reviewed by this court is BOTA's finding that Lakeview does not operate at its lowest feasible cost. This court must presume that BOTA's findings were valid. Additionally, BOTA's decision cannot be set aside because this court would have reached a different conclusion if it had been the trier of fact. BOTA's finding may be set aside only if its finding is not supported by substantial competent evidence. *Sunflower*

*Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 431, 885 P.2d 1233 (1994).

K.S.A. 79-201b does not define the term "lowest feasible cost." Nor has this court conclusively interpreted its meaning. Case law indicates that the phrase is to be interpreted in accordance with Rev. Rul. 72-124. See *Presbyterian Manor*, 16 Kan. App. 2d 710. There is nothing in the statute, however, that limits BOTA or this court to consider *only* the criteria outlined in that ruling.

Equally important are the public policy considerations which underlie these statutes. The statutes were passed to afford tax relief to charitable organizations serving the needs of the elderly. See *Presbyterian Manor*, 16 Kan. App. 2d at 712. While the definition of charity may have broadened over the years, this court recently stated that in passing K.S.A. 79-201b, "the legislature, at least impliedly, adopted the broad concept of charity espoused in *Topeka Presbyterian Manor*." 16 Kan. App. 2d at 713. That case defined charity as "[a] gift to a general public use, which extends to the poor as well as the rich . . . . [C]harity is not exclusive, and draws no distinction of class or caste." *Topeka Presbyterian Manor v. Board of County Commissioners*, 195 Kan. 90, 98, 402 P.2d 802 (1965), *overruled on other grounds Lutheran Home, Inc. v. Board of County Commissioners*, 211 Kan. 270, 505 P.2d 1118 (1973).

This definition makes it clear that "charity" is not limited to those of low income. It is equally clear, however, that consideration of financial criteria and public need are critical to determining whether an organization is charitable.

The district court erred in holding that BOTA could not consider the amount of Lakeview's entrance fee in determining whether it was operating at its lowest feasible cost. Rev. Rul. 72-124 specifically states that while the amount of any entrance fee is not determinative of a lowest feasible cost analysis, it "must be considered in relation to all items of expense, including indebtedness and reserves." Rev. Rul. 72-124.

The district court also erred in holding that BOTA could not consider the fact that Lakeview does not accept Medicaid recipients in reaching its decision. Not only does this court's definition of charity allow such a consideration, Rev. Rul. 72-124 states that

it is appropriate to consider whether an organization "makes some part of its facilities available at rates below its customary charges for . . . persons of more limited means than its regular residents." Medicaid recipients, by their very nature, would fall within this category of residents.

The district court also erred in finding that BOTA improperly focused on financial criteria in reaching its decision. The payment of taxes is inherently about finances. BOTA could not possibly have determined Lakeview's tax status *without* considering its finances. That BOTA's opinion largely focuses on Lakeview's finances is not surprising, nor is it in error.

The district court also erred in finding that BOTA should have taken into consideration Lakeview's deduction of $323,163.46 for volunteer services. Lakeview cites this court's decision in *Presbyterian Manor* as support for its contention that these "contributions" defray operating costs which the facility would otherwise incur and are, therefore, tax deductible. In *Presbyterian Manor*, this court stated that "tax deductible contributions . . . are not to be included in figuring the amount produced by 'charges to residents' in K.S.A. 79-201b *Fifth.*" *Presbyterian Manor*, 16 Kan. App. 2d at 714. Nowhere in that decision did this court hold that *nonmonetary volunteer services* should be deductible as an expense against income. Additionally, nowhere in the federal tax code does it state that volunteer hours are deductible to the contributor, that is, the volunteer. Therefore, they would not be deductible to the recipient facility. See generally 26 U.S.C. §§ 151, 170 (1994).

Finally, the district court erred in finding that BOTA could not consider whether Lakeview meets a community need or public purpose. Not only does Rev. Rul. 72-124 allow BOTA to consider the "community benefit" of any organization seeking tax exempt status, this court's definition of charity as "[a] gift to the general public" clearly allows such a consideration.

BOTA's findings were supported by substantial competent evidence, and the district court erred in substituting its judgment for BOTA's.

Reversed.