Nos. 81,970
81,971
82,268

IN THE MATTER OF THE APPLICATIONS OF KANSAS CHRISTIAN
HOME, *et al.*, FOR EXEMPTION FROM AD VALOREM TAXATION
IN HARVEY COUNTY, KANSAS.

(2 P.3d 168)

Opinion filed March 17, 2000.

*Craig D. Cox*, of Halstead, argued the cause and was on the brief for appellant Harvey County.

*Robert L. Kennedy*, of Holbrook, Heaven & Osborn, P.A., of Kansas City, argued the cause and was on the brief for appellee Kansas Christian Home.

*Kasey Alan Rogg*, of Martin, Churchill, Blair, Hill, Cole & Hollander, Chartered, of Wichita, argued the cause, and *Paul C. Herr, W. Stanley Churchill*, and *J. Michael Kennalley*, of the same firm, were on the brief for appellee Mennonite Board of Missions and Charities of Kansas, Inc., d/b/a Schowalter Villa.

*A. James Gillmore*, of Sizemore, Burns & Gillmore, P.A., of Newton, argued the cause, and *David C. Burns*, of the same firm, was with him on the brief for appellee Kidron Bethel Retirement Service, Inc.

*Jeffrey A. Chanay*, of Entz & Chanay, P.A., of Topeka, was on the brief for *amicus curiae* Kansas Association of Homes and Services for the Aging, Inc.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The Board of County Commissioners of Harvey County (Harvey County) appeals from decisions of the Board of

Tax Appeals (BOTA) granting applications for exemptions from ad valorem taxation in Harvey County, Kansas. The applications for exemptions were made by not-for-profit corporations Kansas Christian Home (Kansas Christian), Kidron Bethel Retirement Services, Inc. (Kidron Bethel), and Mennonite Board of Missions and Charities of Kansas, Inc., d/b/a Schowalter Villa (Schowalter Villa). Kansas Christian, Kidron Bethel, and Schowalter Villa operate continuing care retirement communities (CCRC's), which offer levels of care that range from independent living to nursing home care. Harvey County seeks to tax the housing units for elderly persons, but not the adult care home facilities operated by appellees. Because the legal issues are identical, the three cases were consolidated for appeal by order of the Court of Appeals. This court transferred the consolidated appeal from the Court of Appeals pursuant to K.S.A. 20-3018(c).

BOTA concluded that each of the three facilities is exempt under K.S.A. 79-201b *Fifth*. Kansas Christian, according to BOTA, provides services to its residents at the lowest feasible cost, and Kidron Bethel and Schowalter Villa charge their residents less than their costs.

The BOTA orders appealed from include findings of fact. Appellant does not expressly challenge BOTA's findings of fact as a whole or single out any of BOTA's findings with the contention that they are erroneous. For this reason, the following material facts are taken from among BOTA's findings.

Schowalter Villa

This matter was commenced when Schowalter Villa applied for an exemption from ad valorem taxation. BOTA initially denied the exemption, and Schowalter Villa petitioned the district court for judicial review. The district court reversed and remanded for proceedings consistent with its memorandum decision and order. In its order on remand, BOTA ordered that the exemption be granted based on the determination that Schowalter Villa is operating below its costs. Harvey County's petition for reconsideration was granted by BOTA.

Factual findings with regard to the improvements on the first two parcels were made pursuant to the parties' stipulations, and the applications were granted accordingly. The improvement on the first parcel is a carport. The improvement on the second parcel is a parking lot. They are used exclusively by residents and/or employees of the licensed adult care nursing home. First use of the carport was on January 1, 1996; first use of the parking lot was on January 1, 1997. Thus, the exemptions began on those dates.

Improvements on the third parcel are multiplex independent living units. With regard to its consideration of improvements on the third parcel, BOTA stated:

"5. . . . The Board initially denied the applicant's request for exemption on this parcel because the applicant failed to show that the independent living unit, separate from the assisted living units and the nursing home, was charging its clients less than its costs or in the alternative, that the independent living units were operating at the lowest feasible cost because the financial information provided by the applicant was for the entire operation. The Board also denied the exemption request because, even though no one under the age of 62 had ever resided in the independent living units, there was no written policy declaring a minimum age for occupation. Therefore, it would be possible for a person of any age to live in the independent living units.

"6. The district court found that speculation that a non-elderly person might be able to live in the independent living units was insufficient to support a conclusion that the units were not used exclusively for elderly housing when the uncontroverted evidence established that no one younger than age 62 had actually resided in the units. The district court also held that it was improper for the Board to require the applicant to segregate out financial information on the independent living units from its overall facility. The district court remanded the matter to the Board to determine, based on the aggregate financial information, whether the applicant was operating at a loss or at the lowest feasible cost.

"7. On remand, the Board found, that based on the consolidated financial statements of the applicant, the applicant, in the aggregate was operating below costs. The county requested reconsideration of this decision which was granted. On reconsideration, the county concedes that the units are used exclusively for elderly housing; that the applicant meets the health care needs of the elderly and that the applicant provides financial security to its clients because it is committed to an established policy to keep anyone who cannot pay. The parties have further stipulated, pursuant to the other dockets consolidated with this matter, that the applicant is a not-for-profit, 501(c)(3) corporation. However, the county contends that the applicant is not operating below its cost and, in the alternative, is not operating at its lowest feasible cost."

Exemption was sought pursuant to K.S.A. 79-201b *Fifth* as property used exclusively for elderly housing purposes.

Schowalter Villa is a not-for-profit corporation organized in Kansas.

Schowalter Villa is exempt from paying federal income tax under I.R.C. § 501(c)(3). Thus, contributions to Schowalter Villa are deductible for state income tax purposes by virtue of K.S.A. 79-32,120 for individuals and K.S.A. 79-32,138 for corporations.

Based on Schowalter Villa's financial statements for fiscal years ending 1990 through 1997, BOTA found that Schowalter Villa's "charges to its residents are, in the aggregate, less than its costs."

On the basis of these findings, BOTA concluded that its initial order on remand, which granted the exemption, should be sustained.

### Kansas Christian

Exemption was sought pursuant to K.S.A. 79-201b *Fifth* as property used exclusively for elderly housing purposes. BOTA found that Kansas Christian established that "the property at issue will be used exclusively for elderly housing purposes."

Kansas Christian is a not-for-profit corporation organized in Kansas.

Kansas Christian is exempt from paying federal income tax under I.R.C. § 501(c)(3). Thus, contributions to Kansas Christian are deductible "for state income tax purposes by virtue of K.S.A. 79-32,120 for individuals and K.S.A. 79-32,138 for corporations."

Based on Kansas Christian's financial statements of operating expenses for fiscal years ending December 31, 1985, through 1996, BOTA found that Kansas Christian's "charges to residents exceeded its cost of operation by $2,793,089." However, when BOTA took other expenses, such as depreciation, administrative, and bad debt, into account it found that Kansas Christian "has not achieved a net profit of greater than $46,500 in a year." BOTA also found that without its contributions, Kansas Christian would be operating at an enormous loss.

On the basis of these findings, BOTA concluded that Kansas Christian provides services to its residents at the lowest feasible cost. The exemption was granted.

BOTA denied Harvey County's request for reconsideration of the decision.

### Kidron Bethel

Exemption was sought pursuant to K.S.A. 79-201b *Fifth* as property used exclusively for elderly housing purposes. BOTA found that Kidron Bethel established that the property at issue will be used exclusively for elderly housing purposes.

Kidron Bethel is a not-for-profit corporation organized in Kansas.

Kidron Bethel is exempt from paying federal income tax under I.R.C. § 501(c)(3). Thus, contributions to Kidron Bethel are deductible for state income tax purposes by virtue of K.S.A. 79-32,120 for individuals and K.S.A. 79-32,138 for corporations.

Based on Kidron Bethel's financial statements for fiscal years ending March 31, 1983, through 1997, BOTA found that Kidron Bethel "charges its residents an amount which, in the aggregate, is less than its costs."

On the basis of these findings, BOTA ordered that the exemption be granted.

BOTA denied Harvey County's request for reconsideration of the decision.

Kansas Christian, Kidron Bethel, and Schowalter Villa are CCRC's, which offer to their residents levels of care that range from independent living to nursing home care. As their personal circumstances require, CCRC residents may move from one level of care to another within the establishment.

K.S.A. 79-101 provides that all property not expressly exempted is subject to taxation. Exempted property is identified in Article 2 of Chapter 79. Property used by not-for-profit corporations for the following uses may be exempted by the subsections of 79-201b: *First* applies to hospitals, *Second* to adult care homes, *Third* to private children's homes, *Fourth* to low income housing, *Fifth* to housing for elderly persons, and *Sixth* to housing for mentally ill, retarded, and other handicapped persons. BOTA determined all the property involved in this appeal was exempt under K.S.A. 79-201b *Fifth*.

Harvey County's principal contention on appeal is that 79-201b *Fifth* applies only to the operation of housing for the elderly so that an exemption determination pursuant to that provision must be based exclusively on the financial status of the housing units of the CCRC's rather than on the corporations's financial status for the entire CCRC facility. There is no dispute that the challenged properties and described property uses comprise only a portion of each appellee's property holdings and operations in Harvey County.

The practice by which property owners are exempted from ad valorem tax, when the county in which the real property lies raises a question about entitlement to exemption, involves a written application for exemption before BOTA. The application forms require the applicant to give a legal description of the property in question, to state the use of the property in question, and to list the statute that authorizes the requested exemption. In response to the question of how the property is used, Kansas Christian, Kidron Bethel, and Schowalter Villa stated, respectively: "Elderly care housing"; "Independent and semi-assisted living units for the elderly"; and "Retirement home housing for elderly persons in a Continuing Care Retirement Community (CCRC)."

The BOTA decisions at issue were made in 1998. K.S.A. 79-201b was amended during the 1999 legislative session. Here are pertinent portions of subsections *Second* and *Fifth*—the version of the statute in effect when BOTA made its decisions is in plain type and the 1999 additions are in italics:

"*Second.* All real property . . . actually and regularly used exclusively for adult care home purposes . . . which is operated by a corporation organized not for profit under the laws of the state of Kansas . . . charges to residents for services of which produce an amount which in the aggregate is less than the actual cost of operation of the home or the services of which are provided to residents at the lowest feasible cost, taking into consideration such items as reasonable depreciation, interest on indebtedness, acquisition costs, interest and other expenses of financing acquisition costs, lease expenses and costs of services provided by a parent corporation at its costs, *and* contributions to which are deductible under the Kansas income tax act; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such corporation and used exclusively for adult care home purposes. *For purposes*

*of this paragraph and for all taxable years commencing after December 31, 1976, an adult care home which uses its property in a manner which is consistent with the federal internal revenue service ruling 72-124 issued pursuant to section 501(c)(3) of the federal internal revenue code, shall be deemed to be operating at the lowest feasible cost. . . .*

. . . .

"*Fifth.* All real property . . . actually and regularly used exclusively for housing for elderly persons, which is operated by a corporation organized not for profit under the laws of the state of Kansas . . . , in which charges to residents produce an amount which in the aggregate is less than the actual cost of operation of the housing facility or the services of which are provided to residents at the lowest feasible cost, taking into consideration such items as reasonable depreciation and interest on indebtedness and contributions to which are deductible under the Kansas income tax act; and all intangible property including moneys, notes and other evidences of debt, and the income therefrom, belonging exclusively to such corporation and used exclusively for the purpose of such housing. *For purposes of this paragraph and for all taxable years commencing after December 31, 1976, an adult care home which uses its property in a manner which is consistent with the federal internal revenue service ruling 72-124 issued pursuant to section 501(c)(3) of the federal internal revenue code, shall be deemed to be operating at the lowest feasible cost.*" L. 1999, ch. 154, § 74.

When BOTA's decisions were made, the statutes had not yet been modified to make Rev. Rul. 72-124 of the Internal Revenue Code the controlling standard. The standard of review on questions of law, such as statutory interpretation, requires this court's independent and unlimited consideration. Thus, although the amended statute has not been considered by BOTA, the court may review the agency's decisions for congruency with current law. We bear in mind that tax exemption statutes are to be strictly construed in favor of imposing the tax and against allowing the exemption for one who does not clearly qualify. *In re Tax Appeal of Harbour Brothers Constr. Co.*, 256 Kan. 216, 223, 883 P.2d 1194 (1994).

There are several categories of requirements in 79-201b *Fifth*—organizational, use, and financial. There is no dispute that all appellees meet the organizational requirements. They are not-for-profit corporations. In addition, each is exempt from paying federal income tax under I.R.C. § 501(c)(3), and, therefore, contributions are deductible for state income tax purposes. With regard to the use requirement, there is no dispute on appeal that the use of the exempted property is actually and regularly used exclusively for

housing for elderly persons. With regard to the financial require-
ment, there is no dispute that each corporate appellee as an entity
satisfies the statutory requirement in one way or the other. The
dispute with regard to the financial requirement is strictly confined
to the question of whether the appropriate measure is a corpora-
tion's overall financial picture for the entire CCRC facility or the
financial status of the independent living facility in isolation from
the overall corporate financial picture.

For each of the exemption applicants involved in this appeal,
BOTA's conclusion that 79-201b *Fifth* authorized the requested
exemption was based on the financial status of the entire CCRC
rather than the financial status of the portion of the CCRC which
was the subject of Harvey County's challenge. Where income was
generated by the housing units, it subsidized the operation of other
care levels of the CCRC. Thus, exemption was not barred.

When Schowalter Villa's application was remanded to BOTA
from the district court, one member of BOTA wrote a concurring
opinion that identifies weaknesses in the exemption-granting ra-
tionale under the version of 79-201b *Fifth* then in effect (*i.e.*, on
January 9, 1998):

"I believe the district court's application of this requirement to the facility as a
whole is in error, because part of the complex is operated as a licensed adult care
home, and is exempt under an entirely separate statute. . . .

"The Board carefully explained its reasoning in paragraphs 23 and 24 of the
original order. If the Legislature had intended that the financial requirements
apply to the entire facility, whether used for non-licensed independent living for
the elderly, or used for licensed adult care home beds, it could easily have done
so by avoiding the clear distinctions set forth in K.S.A. 79-201b and enacting a
single statute applicable to adult care homes and elderly housing alike. However,
the Legislature did not elect to do so. The evidence presented at the hearing
clearly showed that the independent living facilities in this complex are operated
in a manner so as to be essentially self-supporting, if not subsidizing other parts
of the complex that are more costly to operate because of the medical require-
ments of the adult care home population."

The crisp distinction between the exemptions for adult care
homes and for housing for elderly persons, which was the basis for
the concurring opinion, has been blurred by the legislature's sub-
sequent action. The legislature added precisely the same sentence

to subsection *Fifth* as it added to subsection *Second*. That sentence provides that "an adult care home" which uses its property in a manner consistent with Rev. Rul. 72-124 shall be deemed to be operating at the lowest feasible costs. Thus, under the *Fifth* subsection, a tax exemption for real property used for housing for elderly persons may depend on how the adult care home with which it is associated uses its property. Moreover, in an additional amendment to subsection *Fifth,* the legislature eliminated the exclusive use requirement: "[S]uch property shall be deemed to be used exclusively for housing for elderly persons purposes when used as a not-for-profit day care center for children." L. 1999, ch. 154, § 74.

In the recent case of *Presbyterian Manors, Inc. v. Douglas County,* 268 Kan. 488, 998 P.2d 88 (2000), we held that the 1999 amendment clarified the legislature's intent that Rev. Rul. 72-124 shall control the granting of an exemption under 79-201b *Second* and *Fifth*. If the property's use is consistent with Rev. Rul. 72-124, then the exemption shall be granted. Although the question here is not the same as that in *Presbyterian Manors,* the 1999 amendment is, in our judgment, critical in determining how the CCRC's are to be viewed for ad valorem tax exemption purposes.

For the purpose of the present appeal, what seems most significant about the amended *Fifth* subsection's linking the tax exemption to Rev. Rul. 72-124 is the utter lack of suggestion in the revenue ruling that less than the whole organization could serve as the basis of a determination. The revenue ruling requires examination of an organization as a whole and consideration of whether the organization as a whole satisfies primary needs of elderly persons. There is nothing in it that would suggest that parts of an organization were to be considered separately from one another or from the whole organization.

Rev. Rul. 72-124 explains the requirements that "homes for the aged" must meet to qualify for exemption under section 501(c)(3) of the Internal Revenue Code. Rev. Rul. 72-124, 1972-1 C.B. 145 (prefatorial note). The gist of the ruling is that such an organization, otherwise qualified for charitable status under I.R.C. § 501(c)(3), will qualify for charitable status if it operates so as to satisfy the

three primary needs of aged persons—housing, health care, and financial security. 1972-1 C.B. 146. The housing need may be satisfied by residential facilities designed "to meet some combination of the physical, emotional, recreational, social, religious, and similar needs of aged persons." 1972-1 C.B. 146-47. The health care need may be satisfied either by providing some form of health care or by maintaining arrangements with other facilities, organizations, or health personnel for care of residents. 1972-1 C.B. 147. The financial security need

"will generally be satisfied if two conditions exist. First, the organization must be committed to an established policy, whether written or in actual practice, of maintaining in residence any persons who become unable to pay their regular charges. . . .

"[Second], *the organization must operate* so as to provide its services to the aged at the lowest feasible cost, taking into consideration such expenses as the payment of indebtedness, maintenance of adequate reserves sufficient to insure the life care of each resident, and reserves for physical expansion commensurate with the needs of the community and the existing resources of the organization." (Emphasis added.) 1972-1 C.B. 147.

The revenue ruling's undivided focus on the entire organization is no surprise given its function of explaining requirements for an organization's exemption from income tax. In contrast, what is being taxed under 79-201b *Fifth* are parcels of real property and improvements that are owned by an organization. They lend themselves to treatment as discrete segments more readily than does the financial condition of an organization. As we have seen, however, the legislature's recent approach to determining property tax exemptions at the least does not emphasize discrete parcels of land and improvements and at most completely de-emphasizes them. Before the 1999 amendments, the use requirement for exemption under 79-201b *Fifth* was specific to the property, but the organizational requirement was not. With regard to the financial requirement, the statutory language arguably ties it to the financial picture of the "housing for elderly persons" rather than to the financial status of a broader corporate organization. One might speculate that the statutory language was chosen with a single-function or-

ganization in mind; that is, an organization that operates housing for elderly persons only rather than a CCRC.

No speculation is required with regard to the significance of the 1999 change to 79-201b *Fifth.* The subsection which previously mentioned only one property use—housing for elderly persons— was amended to bring in identification of an adult care home as a possible standard. There are two ways for the operator to satisfy the financial requirement for exemption: (1) charges to residents amounting to less than the actual cost of operation and (2) operating at the lowest feasible cost. The amendment provides an alternative to the latter. It provides, with regard to the exemption for housing for elderly persons, that an adult care home using its property in a manner consistent with Rev. Rul. 72-124 shall be deemed to be operating at the lowest feasible cost. The only reasonable construction of the amended statute permits consideration of the organization as a whole in gauging consistency with the revenue ruling. A sensible reading of the amended statute would not restrict consideration to the housing division's finances for two of the measures but expand it to consideration of the organization as a whole for the alternative measure, in particular because the alternative measure is, in effect, the equivalent of the second in that it allows the second measure to be deemed satisfied. If the legislature intends for the ad valorem exemption to be based on the operation of each housing unit and not on the operation of the entire CCRC facility, it can easily express that intent.

Harvey County relies on *Lakeview Village, Inc. v. Board of Johnson County Comm'rs,* 25 Kan. App. 2d 597, 966 P.2d 708 (1998), *rev. denied* 266 Kan. 1109 (1999), in support of its principal contention that housing for elderly persons should be examined separately from the CCRC organization as a whole for the purpose of property tax exemption. The opinion in *Lakeview Village* is silent with regard to the question of examining less than the organization as a whole for property tax exemption purposes. In its brief, Harvey County asserts that only the independent living units were at issue in *Lakeview Village,* but there is no documentation before this court relevant to the assertion. In light of the 1999 amendment to

79-201b *Fifth*, the statements in *Lakeview Village* have no current application here.

Harvey County also asks: "With elderly residents paying substantial entrance fees, lease purchase monies, monthly maintenance fees, and costs of additional services, are the corporate taxpayers actually 'operating' the housing facilities?" In other words, the County contends that 79-201b *Fifth* does not apply to the housing for elderly persons at issue because it governs property used exclusively for housing for elderly persons *that is operated by* a not-for-profit corporation, and appellees are not operating their housing for elderly persons. The County's basis for contending that appellees do not operate the housing for elderly persons units is its odd notion that, if residents pay for services, the organizations are not performing a function. If the same illogic were applied to the nursing home facilities, appellees would not be "operating" them either. Not only does the argument lack sense, appellees note that it was not raised in the BOTA proceedings. In addition, the status of the taxpayer as operating the housing facility is to be determined relative to the entire CCRC facility.

BOTA correctly granted ad valorem tax exemption based upon the operation of the entire CCRC facility, and the order of BOTA is affirmed.

Affirmed.

ABBOTT, J., not participating.

CHRISTEL E. MARQUARDT, J., assigned.