(234 P.3d 35)
No. 101,658

In the Matter of the Application of CLASS HOMES I, L.L.C. for Exemption from Ad Valorem Taxation in LABETTE COUNTY, KANSAS; In the Matter of the Application of CLASS HOMES I, L.L.C. for Exemption from Ad Valorem Taxation in CRAWFORD COUNTY, KANSAS; and In the Matter of the Application of CLASS HOMES I, L.L.C. for Exemption from Ad Valorem Taxation in CHEROKEE COUNTY, KANSAS.

—

Opinion filed June 25, 2010.

*Douglas C. Fincher* and *R. Patrick Riordan*, of Woner, Glenn, Reeder, Girard & Riordan, P.A., of Topeka, for appellant.

No appearance by appellees.

Before CAPLINGER, P.J., PIERRON, J., and BRAZIL, S.J.,

PIERRON, J.: CLASS Homes I, L.L.C. (CLASS), petitions for review from an order of the Court of Tax Appeals (COTA) finding that CLASS does not qualify for a tax exemption under K.S.A. 2009 Supp. 79-201b *Sixth*. CLASS sought the exemption for group housing properties located in Labette, Crawford, and Cherokee counties, and COTA found that because CLASS received low income housing tax credits, which were allocated to its majority owner, the exemption did not apply as the properties were not used exclusively for the purpose of group housing of mentally ill or retarded and other handicapped persons.

CLASS is a Kansas limited liability company with three members: (1) managing member CLASS LTD, a not-for-profit Kansas corporation with a .01% interest in CLASS; (2) investor member Kansas Equity Fund IV, L.P. (KEF), which has a 99.99% interest in CLASS; and (3) special member Midwest Housing Assistance Corporation. The CLASS operating agreement states that its purpose is to acquire, finance, construct, own, maintain, improve, op-

erate, and lease housing units consistent with Section 42 of the Internal Revenue Code for the benefit of low income, developmentally disabled individuals and in a manner that addresses their unique needs.

CLASS's housing units are four-plex apartments. To construct and operate the apartments, KEF agreed to contribute $1,022,020.35 to CLASS. KEF bought the majority interest in CLASS in return for allocation of the tax credit benefit because not-for-profit entities' have no tax liability to offset so their projects under Section 42 cannot use the corresponding tax credits. CLASS expects to receive $1,087,890 in tax credits in the years 2007-2017 and intends to allocate this amount to KEF, which, under which CLASS's operating agreement, is not entitled to any interest on its contribution as long as the tax credits are properly allocated. If the full $1,087,890 is not allocated, or a recapture of credits occurs, CLASS has to pay KEF the difference. CLASS expects to operate at a net-income loss for the years 2007-2017.

Pursuant to the operating agreement, KEF has limited involvement in CLASS because management and control of CLASS's business, assets, and affairs is vested with CLASS LTD, which is not obligated to take action to maximize profits for CLASS or its members. CLASS LTD cannot be removed except upon certain conditions constituting default or malfeasance. KEF is prohibited from taking any part in the management, control, conduct, or operation of CLASS; is not authorized to act on CLASS's behalf; and cannot bring an action for partition or dissolution of CLASS if it complies with Section 42. When the period of compliance with Section 42 expires, CLASS LTD has a 1-year right of first refusal to purchase the apartments for the greater of (1) any offer price, (2) $100, or (3) outstanding secured debt, plus tax liability owed, plus any amount owed to KEF.

CLASS filed tax-exemption applications with COTA on March 22, May 15, and May 23, 2007, respectively. In November 7, 2007, COTA held a hearing on the applications, and on October 24, 2008, it issued an order denying the exemptions. CLASS filed a motion for reconsideration on November 7, 2008, which COTA denied on November 25, 2008.

COTA found that CLASS failed to qualify for the exemption under K.S.A. 2009 Supp. 79-201b *Sixth*, because KEF's involvement meant the properties were not used exclusively for an exempt purpose. COTA found that KEF was an investor that kept the property operating in the Section 42 program to maintain its flow of tax credits and that an investor's use of property must be considered when determining whether it is used exclusively for tax-exempt purposes. In the present case, COTA found that reaping tax credits created a simultaneous use of the property as group housing and an investment tool for KEF.

CLASS filed this timely petition for review.

COTA is considered the paramount taxing authority in Kansas, as it exists to decide taxation issues. Therefore, its decisions made within its area of expertise are given great weight and deference. The party challenging a COTA decision has the burden of proving the decision was erroneous, but if COTA's legal interpretation is erroneous as a matter of law, the appellate court must take corrective steps. *In re Tax Appeal of Western Resources, Inc.*, 281 Kan. 572, 575, 132 P.3d 950 (2006); see also *In re Tax Protest of United Ag Services*, 37 Kan. App. 2d 902, 906, 159 P.3d 1050, *rev. denied* 285 Kan. 1174 (2007). Tax-exemption statutes are interpreted strictly in favor of imposing the tax and against allowing an exemption for one who does not clearly qualify. *In re Tax Appeal of Western Resources, Inc.*, 281 Kan. at 575.

The present appeal focuses on whether CLASS's group housing properties were used exclusively for group housing. COTA ruled that the properties were not used exclusively for group housing because CLASS's transfer of low-income housing tax credits to KEF constituted a separate or intervening use as an investment vehicle. CLASS makes a number of arguments in alleging COTA erred as a matter of law.

In relevant part, K.S.A. 2009 Supp. 79-201b states:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Sixth.* All real property and tangible personal property actually and regularly used exclusively for the purpose of group housing of mentally ill or retarded and other handicapped persons . . . ."

Although the Kansas appellate courts have not addressed the specific investment arrangement present here, they have addressed the question of exclusivity in *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties*, 246 Kan. 161, 170, 786 P.2d 1141 (1990), and in *In re Board of Johnson County Comm'rs*, 225 Kan. 517, 518, 592 P.2d 875 (1979). In *Johnson County Comm'rs*, the court found that property owned by a non-tax-exempt entity then leased for profit to a qualifying tax-exempt entity is not being used exclusively for tax-exempt purposes and is subject to ad valorem and property taxes. 225 Kan. at 522-23. In *Wyandotte County Comm'rs*, the court examined the inverse situation and found that property owned by a qualifying tax-exempt entity then leased to a non-tax-exempt entity is also not being used exclusively for tax-exempt purposes and is subject to ad valorem and property taxes. 246 Kan. at 170, 176.

In both *Wyandotte County Comm'rs* and *Johnson County Comm'rs* the court stressed the importance of interpreting tax-exemption statutes strictly in favor of imposing the tax and defined "used exclusively" as that which is used only, solely, and purely for the purposes stated, and without participation in any other use. *Wyandotte County Comm'rs*, 246 Kan. at 166; *Johnson County Comm'rs*, 225 Kan. at 519. Of equal importance is that both courts stated that taxation is the rule, that exemption is the exception, and that all doubts are resolved against exemption and in favor of taxation. *Wyandotte County Comm'rs*, 246 Kan. at 166; *Johnson County Comm'rs*, 225 Kan. at 519. In the present case, resolving all doubts in favor of taxation appears fatal to CLASS's arguments.

CLASS attempts to distinguish *Wyandotte County Comm'rs* and *Johnson County Comm'rs*, suggesting that in both cases, the crucial fact was that the property owner leased the property in an attempt to make rental income, creating an economic benefit separate from the exempted use of the property. CLASS suggests the present case is different because it does not concern a lease but instead a tax credit. COTA recognized this distinction but found it incon-

sequential and stated the premise is the same because KEF reaps a financial investment benefit from the properties and is therefore not entitled to the exemption.

CLASS argues there is a distinction between a lease and the financial investment benefit in the present case because KEF is not the property owner and because COTA's interpretation means that income received from an exempt use would create a lack of exclusivity when used to pay employee salaries or mortgage interest. In this sense, CLASS argues that its relationship is most analogous to that of a lender-borrower. CLASS admits that the present case creates a financial arrangement "outside the norm" for a tax-exempt enterprise but asserts that KEF is in the same position as a lender.

There are a number of problems with CLASS's analogy. First, as explained by COTA, CLASS has to pay KEF $1,087,890 in full either through allocation of the tax credits or otherwise, and KEF possesses ultimate control over the properties because it has a 99.99% interest in CLASS. Unlike a lender-borrower scenario, and contrary to CLASS's assertions, KEF's contractual interest means it is essentially an owner. CLASS attempts to undercut this distinction by pointing out that KEF must abide by certain contractual restrictions and that it is not the operator of the property. In fact, COTA did find that KEF was not the operator, but CLASS did not argue, nor did COTA find, that KEF was not the owner. Although in practice under the CLASS operating agreement, KEF's rights are limited, its majority interest in CLASS is distinguishable from a lender's, in that a lender is merely owed an obligation.

KEF is also distinguishable from employees of a not-for-profit enterprise, as employees are paid in return for personal services rendered to the enterprise, whereas KEF is a majority owner with a direct financial stake. There is no evidence or argument that the tax exemption provisions of K.S.A. 2009 Supp. 79-201b *Sixth* were intended to function as an investment vehicle for entities with an ownership interest.

This point is reinforced by *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 766-67, 973 P.2d 176 (1999), in which the court analyzed K.S.A. 2009 Supp. 79-201 *Ninth*, a pro-

vision similar to K.S.A. 2009 Supp. 79-201b *Sixth* concerning tax exemptions for community service organizations providing humanitarian services. In finding that a lease of property between two tax-exempt organizations did not necessarily preclude exemption as in *Wyandotte County Comm'rs*, the court stated that pursuant to the language of K.S.A. 2009 Supp. 79-201 *Ninth*, no part of the income generated by the lease could inure to the benefit of any private shareholder or individual. 266 Kan. at 766-67. In the present case, KEF is not a tax-exempt organization and it is a private shareholder-owner that would derive income generated by the tax-exemption credits CLASS expects to accrue through its operations. Therefore, even if we analogize KEF's position to that of a lessor, its ownership interest and contractual financial benefit create a position that is anathema to exemption under K.S.A. 2009 Supp. 79-201b *Sixth*.

CLASS fails to satisfy its burden to show it clearly qualifies for an exemption. Although this particular contractual relationship between an otherwise tax-exempt operator (CLASS) and a for-profit shareholder-owner (KEF) is not discussed in K.S.A. 2009 Supp. 79-201b *Sixth* or Kansas case law, the resolution of doubt against exemption, coupled with the standards set forth in *Wyandotte County Comm'rs, Univ. of Kan. School of Medicine,* and *Johnson County Comm'rs*, suggest that CLASS does not qualify for the exemption under K.S.A. 2009 Supp. 79-201b *Sixth*, given its current arrangement with KEF, and that COTA did not err as a matter of law.

Affirmed.