239 P.3d 96 (2010)
In the Matter of the Application for TAX EXEMPTION OF KOURI PLACE, L.L.C.
No. 101,648.
Court of Appeals of Kansas.
September 3, 2010.
*98 Karl N. Hesse and James D. Oliver, of Foulston Siefkin LLP, of Wichita, of Overland Park, for appellant.
Patricia J. Parker, assistant county counselor, for appellee.
Before McANANY, P.J., BUSER and LEBEN, JJ.
LEBEN, J.
The Kansas Legislature has provided a real-estate tax exemption when the property is "used exclusively" as a group home for low-income people with special needs. Kouri Place, L.L.C., sought an exemption for such a property, one that has 14 of its 15 units used to house people with special needs and 1 unit devoted to housing on-site managers. The Kansas Court of Tax Appeals agreed that the exclusive physical use of the property qualified for the tax exemption. But the court nonetheless denied the exemption because Kouri Place financed most of the project's construction through a federal tax-credit program; that court held that this constituted a separate intangible use of the real estate, thus eliminating exclusive use as a group home.
We find the Court of Tax Appeals' interpretation of this exemption statute in error. Kouri Place used a tax-credit program established by federal law, authorized by state law, and awarded by a Kansas state agency for the purpose of building the group home. The dominant purpose of the "use" of the tax-credit program here was to build a group home. Indeed, this is exactly what Congress intended when it set up the low-income housing tax-credit programthat people would use the tax credits to help get such projects built.
Our case arises under K.S.A.2009 Supp. 79-201b Sixth, one of several similar Kansas statutes providing exemption from real-estate property taxes. K.S.A.2009 Supp. 79-201b Sixth provides for an exemption when the real property is (1) "actually and regularly used exclusively for the purpose of group housing" of people with special needs such as mental illness or physical or mental disability, (2) operated by a nonprofit corporation, (3) charging residents less than the actual cost of operation, and (4) licensed under Kansas law as a facility for housing people with special needs. The Court of Tax Appeals found that only one of these requirementsexclusive usewas missing. Kouri Place has appealed, and the appeal focuses on the single issue of whether the property was being "used exclusively for the purpose of group housing" of people with special needs.
The underlying facts are not in dispute. This group-home project was undertaken by Starkey, Inc., a nonprofit corporation in Wichita that has been serving people with disabilities since 1930; Starkey is funded in part by state and county funds. Starkey decided to create a community living home for people with special needs who could, with some help, live independently. Starkey turned the project into reality with three main funding sources: land donated by Wichita residents Sam and Jacque Kouri; an affordable housing grant of $67,500 from the Federal Home Loan Bank of Topeka; and $1,268,500 in federal income-tax credits allocated to this project by the Kansas Housing Resources Corporation. Starkey was able to turn the income-tax credits, usable over the next 10 years, into $1,048,930 in immediate cash paid from investors in exchange for the future tax credits. The investors were able to use the tax credits to offset federal income taxes they otherwise would have owed. By paying a discounted amount of cash for what would later be nearly $1.3 million in tax credits, the investors will earn about 1.9% on their investment over the 10-year period of the credits.
The group home was built on the donated land and opened to qualified residents in 2005. At the time the tax-exemption application was filed, all residents were low-income Kansans receiving Medicaid assistance who were charged rental rates that were below state-established guidelines for low-income housing.
Starkey used a standard organization structurethe formation of a limited-liability companyto transfer the tax credits to investors. The limited-liability company, *99 Kouri Place, L.L.C., became the owner of the property. The investors were aggregated into a single limited partnership, called Kansas Equity Fund III, L.P., which owned 99.9% of Kouri Place. The use of such an organizational structure and the allocation of such a high percentage to the investor member(s) is a standard practice in building housing using these low-income housing tax credits. With this structure, essentially all of the tax credits can be passed through to the investors, who can use them, rather than Starkey, a nonprofit corporation that generally doesn't owe income taxes and thus can't use these tax credits. See Handel & Nahas, Leveraging the Low-Income Housing Tax Credits Program, 26 L.A. Law 23 (Jan.2004). Starkey owned the other .01% of Kouri Place.
The tax credits came through a program that Congress established by statute. See 26 U.S.C. § 42 (2006). These credits are available under limits set by Congress, and they are allocated by state agencies. See generally Partnerships: Market Segment Specialization Program Guideline, 2002 WL 32770029, at *191-92 (I.R.S.2002). The Kansas Legislature authorized the Development Finance Authority to set up a subsidiary corporation to allocate these credits, and that program is now administered by the Kansas Housing Resources Corporation, a subsidiary of the Development Finance Authority. See K.S.A. 74-8904(v); see also K.A.R. 110-10-1. Significantly, Congress has required that at least 10 percent of the credits be allocated to nonprofit entities. See 26 U.S.C. § 42; Partnerships, 2002 WL 32770029, at *191.
As the basis for its decision, the Court of Tax Appeals seized upon the organization structure chosen by Starkey to facilitate the use of these tax credits. The real estate is owned by Kouri Place, and Kansas Equity Fund III has a 99.99% ownership interest in the limited-liability company. Thus, the Court of Tax Appeals concluded that Kansas Equity Fund III "possesses the ultimate control over the physical use of the property." In the event that the Internal Revenue Service would determine that the property wasn't being used for the purposes for which Congress made the tax credits available and the IRS disallowed those creditsthe Court of Tax Appeals concluded that Kansas Equity Fund III could take over the property to protect its interests since it had "the ultimate control" as a 99.9% owner of the limited-liability company.
To the extent the Court of Tax Appeals equated control with ownership, it is legally wrong to conclude that a member holding a majority ownership interest in a limited-liability company owns the company's property. A limited-liability company may own property in its own name, and members have no ownership interest in specific limited-liability company property. K.S.A. 17-76,111. But the Court of Tax Appeals seems to have focused more on the reality of the situation than on legal ownership. Even there, though, Starkey is solely responsible for managing the operation of the property under the limited-liability company's operating agreement, subject to very limited decisions that require the approval of all members. In addition, while there are potential circumstances in which Starkey could be removed as manager, such as fraud, there is no suggestion in our record that there is even a remote likelihood of Starkey's removal. Instead, Kouri Place has worked exactly as it was supposed to. Starkey used the state allocated federal income-tax credits to finance the construction of low-income housing, and the project is being used exclusively for that purpose.
The statute at issue, K.S.A.79-201b Sixth, tells us that purpose matters: there must be exclusive use of the property "for the purpose of group housing" of these people with special needs. Using federally provided and state-allocated tax credits for the purpose of building this projectthe intended purpose of K.S.A.2009 Supp. 79-201b Sixthshould not logically turn the purpose of the use of the property into something else. We find nothing in the organization structure that Starkey adopted to get the tax credits into the hands of investors who could use them again the intended purpose of those tax creditsthat should affect this result. Our state legislature obviously was trying to encourage the development of these group homes through the property-tax exemption, and *100 Congress and the state legislature were trying to encourage the building of such housing through these tax credits. The Court of Tax Appeals' approach turns purposive statutory interpretation on its head by concluding that taking advantage of two statutes aimed at the same general goal somehow negates the applicability of one of the statuteseven though there's no conflict between the language of the two statutes and our tax-exemption statute expressly tells us that purpose matters.
The question before us is one of statutory interpretation, and we generally review such questions independently, without deference to a lower court. Genesis Health Club, Inc. v. City of Wichita, 285 Kan. 1021, Syl. ¶ 2, 181 P.3d 549 (2008). Some level of deference has traditionally been given in Kansas to the statutory interpretation of an administrative agency regarding a statute it administers. E.g., Blue Cross & Blue Shield of Kansas, Inc. v. Praeger, 276 Kan. 232, 249, 75 P.3d 226 (2003) (giving "great deference" to Insurance Commissioner's statutory interpretation if it has a "rational basis"). Despite its name, the Court of Tax Appeals is an administrative agency within the executive branch of state government. But the Kansas Supreme Court has recently said that "deference [is] no longer being given to the agency's interpretation." Kansas Dept. of Revenue v. Powell, 290 Kan. 564, 567, 232 P.3d 856, 859 (2010); accord Ft. Hays St. Univ. v. University Ch. Am. Ass'n of Univ. Profs., 290 Kan. 446, Syl. ¶ 2, 228 P.3d 403 (2010). These cases arose in situations where the case for deference to an agency's interpretation is relatively weakPowell, a case before the Civil Services Board, which is a court-like tribunal, and Ft. Hays St. Univ., a case before the Public Employee Relations Board, which was interpreting its own statutory authority.
Although the factual settings of these two cases were limited, our Supreme Court's language regarding the lack of deference to agency statutory interpretations was not. It is possible that some level of deference might yet be given to agency interpretation in some situations, such as when an agency is administering a technically complex regulatory scheme in which complicated legal issues are involved even in determining the facts. E.g., Frank v. Kansas Dept. of Agriculture, 40 Kan.App.2d 1024, Syl. ¶¶ 1-2, 198 P.3d 195 (2008); see also Pappas, No Two-Stepping in the Laboratories: State Deference Standards and Their Implications for Improving the Chevron Doctrine, 39 McGeorge L.Rev. 977 (2008); Andersen, Chevron in the States: An Assessment and a Proposal, 58 Admin. L.Rev. 1017 (2006); Asimow, The Scope of Judicial Review of Decisions of California Administrative Agencies, 42 U.C.L.A. L.Rev. 1157, 1192-1209 (1995). But the case now before us is much like Powell, in which the administrative agency was acting in a court-like manner, a situation in which we are equally capable of the task of statutory interpretation. Based on Powell, we conclude that no deference is owed here to the statutory interpretation of the Court of Tax Appeals.
There is one standard rule of statutory interpretation in tax cases that we must consider: the rule that tax-exemption statutes are interpreted strictly in favor of imposing the tax and against granting the exemption except for one who clearly qualifies. In re Tax Exemption Application of Mental Health Ass'n of the Heartland, 289 Kan. 1209, 1211, 221 P.3d 580 (2009). Lest that be considered a strict ruling requiring that we deny an exemption any time there is an arguable ambiguity in the statute, however, our Supreme Court has cautioned in recent years that the strict construction of an exemption statute should not lead to an unreasonable interpretation. 289 Kan. at 1211, 221 P.3d 580; In re Tax Application of Lietz Constr. Co., 273 Kan. 890, Syl. ¶ 7, 47 P.3d 1275 (2002).
In re Tax Exemption Application of Mental Health Ass'n of the Heartland is such a case where strict construction of an exemption statute led to an unreasonable interpretation. It involved the interpretation of exclusive-use provisions. The Mental Health Association of the Heartland had set up a low-rent apartment building where residents had to "have severe and persistent mental illness" and be homeless. 289 Kan. at 1210, 221 P.3d 580. The Court of Tax Appeals *101 found that the project didn't meet some of the requirements of K.S.A.2009 Supp. 79-201b Fourth, which provides a tax exemption for property exclusively used for the housing of persons with special needs who are low-income, but only when other requirements (like enrollment in programs for life-training skills) are also met. The Mental Health Association of the Heartland argued that it qualified for exemption under other statutes, specifically K.S.A.2009 Supp. 79-201 Second (property exclusively used for charitable purposes) and K.S.A.2009 Supp. 79-201 Ninth (property exclusively used for the predominant purpose of providing humanitarian services). The Court of Tax Appeals held that K.S.A.2009 Supp. 79-201b Fourth applied, since it dealt specifically with housing low-income people with special needs and a standard rule explains that a specific statute applies over a more general one. 289 Kan. at 1214-15, 221 P.3d 580. A panel of our court agreed. See In re Tax Appeal of the Mental Health Ass'n of the Heartland, 40 Kan.App.2d 531, 194 P.3d 580 (2008).
Our Supreme Court reversed, finding that there was no conflict between the three statutes and, thus, no reason that an exemption could not be granted under any of the three. The court found that the property's use met the requirements of K.S.A.2009 Supp. 79-201 Second (exclusive use for charitable purposes) even though the nonprofit entity that owned the property received some reduced-cost fees for its services. 289 Kan. at 1216-17, 221 P.3d 580. The court found that the property's use also met the requirements of K.S.A.2009 Supp. 79-201 Ninth (predominant purpose of use is humanitarian services). 289 Kan. at 1217-18, 221 P.3d 580. The court then held that there was no conflict between the statutesand thus no need to apply the rule that a more specific statute controls over a conflicting general one. 289 Kan. at 1218, 221 P.3d 580.
The Mental Health Ass'n of the Heartland case is significant to the analysis of our case. First, ambiguities in the statutes were analyzed there that could have invoked application of the rule that tax-exemption statutes are strictly construed against granting the exemptionif any ambiguity were enough to invoke it. Both the Court of Tax Appeals and our court had felt there was sufficient ambiguity in the interplay of the statutes to invoke the rule that the more specific statute (which the taxpayer didn't meet) controlled. In addition, our Supreme Court addressed an ambiguity in the statute providing an exemption for property used exclusively for charitable purposes; since the residents paid some fees, there was an argument that it was not exclusively a charitable purpose. But the court noted that "the modern view" of what constitutes charitable or benevolent purposes generally allows the receipt of some offsetting rental or fee payments. 289 Kan. at 1216-17, 221 P.3d 580 (citing cases). Second, the court noted that "the legislative history of the three statutes in question shows a clear intent on the part of the legislature to broaden the scope of property that is exempt by virtue of its charitable or humanitarian use." 289 Kan. at 1217, 221 P.3d 580. One of those three statutes, K.S.A.2009 Supp. 79-201b, is the statute at issue in our case.
Any analysis of K.S.A.2009 Supp. 79-201b Sixth must start with the words used in it, which are of course the most important guide to the legislature's intention. 289 Kan. at 1216, 221 P.3d 580. The most significant word at issue here is "use," and as we've noted, all agree that the exclusive physical use of the property is for an exempt purpose. In any ordinary meaning of the word "use," Starkey and Kouri Place have made use of the tax credits to support the exempt property use, not a use of the property to support some other use (like making a profit).
Kansas courts have also consistently looked to the purpose of a statute to determine its meaning. E.g., Southwestern Bell Tel. Co. v. Beachner Const. Co., 289 Kan. 1262, 1270, 221 P.3d 588 (2009); Mason v. McLeod, 57 Kan. 105, Syl. ¶ 2, 45 P. 76 (1896); State ex rel. Kellogg v. Mercantile Association, 45 Kan. 351, 355, 25 P. 984 (1891). There is no question here that K.S.A.2009 Supp. 79-201b Sixth was intended to spur the development of group housing for low-income Kansans with special needs. We see no reason that the legislature could have intended that the use of these federally provided, state-allocated income-tax credits *102 should negate the incentive our legislature provided through K.S.A.2009 Supp. 79-201b Sixth.
We acknowledge that another panel of our court has come to the opposite conclusion in a case that is indistinguishable from this one. See In re Tax Exempt. Application of CLASS Homes I, 44 Kan.App.2d ___, 234 P.3d 35 (2010). We respectfully disagree with its conclusion:
 The CLASS Homes opinion cited the rule that decisions of the Court of Tax Appeals about tax matters "are given great weight and deference," 234 P.3d at 37; we believe that deference is no longer owed to statutory interpretations of the Court of Tax Appeals under the Kansas Supreme Court decisions we've cited. In 2009 in Mental Health Ass'n of the Heartland, a tax-exemption appeal, the court did not even mention deference to the agency interpretation; in 2010 in Powell and Ft. Hays St. Univ., the court explicitly said it no longer gave deference to agency statutory interpretations.
 The CLASS Homes opinion also relied in part on the rule of strict construction against tax exemptions, a rule that did not carry the day in Mental Health Ass'n of the Heartland. We think it has no more weight here than it did in that case; in both situations, the clear statutory purpose and the statutory language provide support for the exemption. As the court noted in Mental Health Ass'n of the Heartland, although the strict-construction rule was applied more strictly in early exclusive-use cases, the legislature has since tried to broaden the availability of these exemptions in several statutes, including K.S.A.2009 Supp. 79-201b. 289 Kan. at 1211-13 [221 P.3d 580].
 The CLASS Homes opinion found two past cases of support to its holding: Board of Wyandotte County Comm'rs v. Kansas Ave. Properties, 246 Kan. 161, Syl. ¶ 5, 786 P.2d 1141 (1990); and In re Johnson County Comm'rs, 225 Kan. 517, Syl. ¶ 2, 592 P.2d 875 (1979). Those cases do confirm that that there may be a nonphysical, intangible use of property, just as there may be a physical use. One such intangible use is the leasing of the property for a profit. Thus, in each of those cases, when a nontax-exempt entity leased its property for a profit to a tax-exempt entity (which then physically used the property only for exempt purposes), the property was not exclusively used for that exempt purpose because the property is simultaneously being used to make money for the owner. But in the case of Kouri Place, the only financial use arguably being made of the property is realistically needed to adapt the use of these tax credits to the financing of a building being built by a nonprofit corporation that can't take tax credits for its own use. That is not akin to the leasing of the property for a profit.
 The CLASS Homes also found nonbinding language in another case, In re Tax Appeal of Univ. of Kan. School of Medicine, 266 Kan. 737, 766-67, 973 P.2d 176 (1999), supportive of its analysis. We do not find it persuasive in deciding how to interpret K.S.A.2009 Supp. 79-201b Sixth on our facts. In the University of Kansas case, one nonprofit entity leased a building to another nonprofit entity at below-market rent, and the lessee used the building predominantly for humanitarian purposes. The court held that this qualified for a tax exemption under K.S.A. 79-201 Ninth, which grants an exemption when the "predominant purpose" of the use is for humanitarian purposes. 266 Kan. at 764-69 [973 P.2d 176]. The CLASS Homes opinion explains that our Supreme Court noted as one of several points supporting this result that none of the funds generated by the lease rental payments went to benefit any private shareholder or individual. The CLASS Homes panel concluded that this suggested that having a private benefit to anyone holding an interest in Kouri Place would negate an exclusive-use exception. 234 P.3d at 39. But the University of Kansas court also said that its decision was ultimately guided by "the intent of the legislature," and its reference to the lack of pass-through rental income to any private interest *103 holder was merely one of the reasons it concluded that its interpretation in that factual setting was consistent with legislative intent. 266 Kan. at 766-67 [973 P.2d 176]. In our case, there is a clear indication of legislative intent both in K.S.A.2009 Supp. 79-201b Sixth, which is designed to encourage the development of group-homes for low-income, special-needs Kansans, and the federal statute, 26 U.S.C. § 42, which is designed to encourage the development of low-income housing generally by giving tax credits to entities that pay income taxes so that such entities will put money into low-income housing projects. Nothing in the University of Kansas opinion suggests to us that combining these two statutory purposes into a single project should cause the project to lose eligibility for a tax exemption under our statute.
In sum, Kouri Place is entitled to the tax exemption that it sought under K.S.A.2009 Supp. 79-201b Sixth. The ruling of the Court of Tax Appeals is reversed, and this case is remanded with directions to enter an order approving the exemption application.